THE STATE v. DOEPKE, *Appellant.*

1. **Coffin—Stealing is Larceny**: STATUTES CONSTRUED. It is larceny to steal a coffin in which the remains of a human being are interred. This was so at common law; and the rule is not changed by anything contained in Wag. Stat., secs. 11, 12, 13, p. 500. Sections 11 and 12 relate only to the exhumation of the remains. Section 13 prescribes the punishment for an attempt to remove the remains, or to steal the coffin, or any article interred with the body. Neither of them provides for the case where the theft of the coffin is actually accomplished.

2. **Pleading, Criminal.** It is not necessary in an indictment for a common law offense to negative exceptions contained in a statute.

3. ———: PROPERTY IN A COFFIN. In an indictment for the larceny of a coffin in which the remains of a human being are interred, the coffin is properly laid to be the property of the person who furnished it and buried the deceased.

4. **Larceny**: VALUE OF PROPERTY. In determining whether an offense is grand or petit larceny, the inquiry should be, not what is the value of the property stolen to the owner, but what price would it command in open market.

*Appeal from St. Louis Court of Appeals.*

This was an indictment for stealing a rosewood coffin of the value of $35, the property of one Merkel. It appeared in evidence that Merkel had bought the coffin for $35 for the purpose of burying his father-in-law, Gerhard Doll; that it was used for that purpose by Merkel's order that on the night after the burial defendant opened the

grave and took out both the body and the coffin; that there had been no administration upon the estate of Doll; that when defendant was arrested the body was out of the coffin, and both the coffin and the body were in a wagon; that defendant stated that he was taking the body to be dissected. Evidence was introduced by the defense tending to show that there was no marketable value for second-hand coffins, or for such as had been used for burial purposes, and that there was no place where such coffins were bought or sold; that a coffin in which a corpse had been buried was of no value or use except for the purpose for which it was first used.

The jury found the defendant guilty of grand larceny and fixed his punishment at imprisonment in the penitentiary for two years. A motion for a new trial was made and overruled, and the defendant appealed to the St. Louis court of appeals, which affirmed the judgment of the criminal court. He then appealed to this court.

*C. C. Simmons* and *J. J. McBride* for appellant.

*J. L. Smith*, Attorney-General, for the State.

HENRY, J.—It is conceded by counsel for appellant, and fully established by the authorities, that a coffin in

1. COFFIN — STEAL-ING IS LARCENY: statutes construed. which the remains of a human being were interred, was a subject of larceny at common law. It is contended, however, that sections 11, 12, 13 and 14, of our act concerning crimes and punishments, Wag. Stat., pp. 500, 501, " stand in lieu of the common law as it existed in reference to the question under consideration, and that the acts alleged to have been committed by the defendant in this case, amounted to nothing more than a statutory misdemeanor." Section 11 provides a punishment for removing the remains of a human being from the grave, or other place of interment. Section 12 makes it a misdemeanor for any one to receive such remains, knowing them to have been disinterred con-

14—68

trary to the provisions of the preceding section.   These sections, it might be contended with plausibility, have superseded the common law in regard to the exhumation of the remains, but have no bearing upon the question of stealing a coffin or grave clothes.   It was not larceny at common law to take a dead body from its place of interment, under any circumstances, but it was a misdemeanor, and as sections 11 and 12 expressly provide a punishment for that offense, as also for receiving the dead body, those sections may be taken to stand in lieu of the common law in relation to the removal of the remains of the dead.

Section 13 provides that " every person who shall open the grave or other place of interment, or sepulture, with intent to remove the dead body or remains of any human being for any of the purposes specified in section 11 of this chapter, or to steal the coffin or any vestment, or other article, or any part thereof interred with such body, shall, on conviction," &c.   This section provides a punishment for an attempt to remove the remains or to steal the coffin or any article interred with the body.   There is no enactment in regard to stealing a coffin, and with what propriety can it be said that the Legislature having prescribed a punishment for one offense, which was punishable at common law, has thereby repealed the common law in regard to a different and higher grade of offense?   By the common law it was larceny to steal a coffin in which the remains of a human being were interred.   It was at common law also a misdemeanor to attempt to commit that offense, and the argument urged here is, that inasmuch as our Legislature has provided a punishment for the misdemeanor it has thereby entirely superseded and abolished the common law as to the felony.   We may not appreciate the force of the argument, but it comes far short of securing our assent to the proposition.   That the stealing of a coffin is still larceny in this State is recognized in section 13, wherein it provides a punishment for the attempt to steal a coffin.   We therefore conclude that notwithstanding the

enactment of those sections a coffin in which the remains of a human being are interred is still a subject of larceny in this State.

It is insisted that the indictment is defective in failing to negative the exceptions contained in section 14. This 2. PLEADING, CRIM- question has been otherwise determined by INAL. repeated decisions of this court, and recently in the *State v. O'Gorman, ante,* p. 179.

The coffin was alleged in the indictment to be the property of one Merkel, a son-in-law of the deceased, and 3. ——: property it is contended that when he had the body in a coffin. interred he parted with all the property he had in the coffin, and that, therefore, the conviction of defendant cannot be sustained. Roscoe, in his work on criminal evidence, says: " A shroud stolen from the corpse must be laid to be the property of the executor, or of whoever else buried the deceased;" p. 604, (6th Am. Ed); 1 Chitty Crim. Law, (5th Am. Ed.) 44 ; 1 Hawkins, P. C., 144, 148; Sharswood's Black., 4th vol., 235. All these authorities, it is true, speak only of shrouds and ornaments buried with the dead, but the principle upon which these may be alleged to be the property of the executor, or of the person who buried the deceased, will certainly sustain an allegation that the coffin is the property of the person who buried the deceased.

The court, for the State, instructed the jury that if they found that the coffin was of less value than $10, and 4. LARCENY: value that defendant stole it, they should convict of property. him of petit larceny. By another instruction they were told that in order to convict defendant of grand larceny they should find the coffin to have been of the value of $10 or more, and that it was sufficient if they found it to have been of that value to the owner, and that it was not required that it should be of that value to third persons, or that it would command that price in the open market. This latter instruction was erroneous. The authorities cited to support the doctrine it announced give it

no countenance.   In 3 Greenleaf's Evidence, p. 140, section 153, the author says;   "Nor is it necessary to prove the value of the goods stolen, except in prosecuting under statutes which have made the value material either in constituting the offense or in awarding the punishment.   But the goods must be shown to be of some value at least to the owner, such as reissuable bankers' notes, or other notes completely executed but not delivered or put into circulation, though to third persons they might be worthless."   It is clear that in the latter clause he was speaking of other prosecutions than those under statutes which make the value material, either in constituting the offense or awarding the punishment.

"By the English law, as it stood when this country was settled, larceny was divided into grand and petit; the former being committed where the goods stolen were over twelve pence in value, the latter where they were of the value of twelve pence or under."   Bishop's Crim. Law, vol. 1, sec. 679.   "In these valuations (says East) the valuation ought to be reasonable; for when the statute (of West. I. *c.*, 15) was made, silver was but 20d an ounce, and at the time, Lord Coke wrote, it was worth 5s, and it is now higher."   2nd East's P. C., 736.   So Lord Coke, 2 Inst. 189, says: "The things stolen are to be reasonably valued, for the ounce of silver at the making of this act was at the value of 20d, and now it is at the value of 5s and above."   See also Black. Com., vol. 4, 237.   The statute of Westminister, I. *c.*, 15, referred to by these authors was that by which the distinction betwixt grand and petit larceny was made.

By St. 7 and 8, Geo. IV, *c* 29, sec. 2, that distinction was abolished, and every larceny, without regard to the value of the goods, was made grand larceny.   Sharswood's Black., vol. 4, 230.   When it is said by elementary writers, and in adjudged cases, that in order to constitute the offense of larceny, it is sufficient if the thing stolen be of some value to the owner, however small, although to third persons worthless, the observations relate to the offense of petit

larceny, or to simple larceny under the statute 7 and 8, Geo. IV, and similar statutes, and are wholly inapplicable to grand larceny. Where a distinction is made by statute between that and petit larceny, based upon the value of the goods stolen, the remarks of East and Lord Coke above quoted show conclusively that the value of the goods was to be measured by the current coin of the realm, and that the cash value was that to be ascertained in determining whether the theft was grand or petit larceny.

If the criterion of the value given by the court, in the second of the above instructions be correct, one might be convicted of grand larceny for stealing a finger-ring of the intrinsic or market value of $5, only because, forsooth, being a gift to the owner by a departed friend, or wife or other loved one, he placed an estimate upon it far beyond its value, although of no greater value to third persons than another ring of the same kind, which could be purchased wherever kept for sale for $5. The criterion of value by which the jury were told in that instruction they might be governed, does not apply as a general rule in civil proceedings, and when the statute requires that property stolen shall be of the value of $10 in order to constitute the theft thereof grand larceny, the term "value" is to be taken in its legal sense, which does not differ from its common acceptation, and there is no warrant for allowing any other mode of ascertaining the value of stolen property in a criminal prosecution than that which prevails generally in civil proceedings. It is not the fancy estimate of value placed upon the property by the owner which is to determine whether the theft is grand or petit larceny, but its actual value, as that value is usually ascertained in other proceedings.

If one sue another for conversion of personal property, he recovers, not what the property was worth to him, but its value in the market; and it would be strange enough, if, when the statute declares that no one shall be adjudged guilty of grand larceny, unless the goods stolen were of the

value of $10, a criterion of value should be adopted which would authorize a conviction for that offense, when the goods stolen are worthless to third persons, and of no market value, but possess a value which can only be measured by fancy or sentiment, a measure of value as uncertain and variable as the whims and caprices of the owner of the goods, or the witnesses he may introduce to prove their value. We cannot substitute this for the stable and certain measure furnished by the price which such goods command in the market. In some civil cases, we are aware, the jury are allowed to consider *pretium affectionis,* in estimating the value of property, but the reason for the departure from the general rule in those cases does not apply in a prosecution for stealing such property. The purpose of the prosecution is to punish the thief, not to compensate the owner of the property for his loss. The judgment of the court of appeals is reversed and cause remanded. All concur.

REVERSED.