## TUBBS v. GARRISON.

1. **Execution**: EXEMPT PROPERTY: OWNER ABOUT TO LEAVE THE STATE: EVIDENCE: ESTOPPEL. Where property which is ordinarily exempt is levied upon on the ground that the owner is about to leave the state, the owner, in an action against the officer for the wrongful conversion of the property, is not estopped by declarations previously made by him of his intention to leave the state, for he has a right to change his intention; and evidence of such declarations are not admissible against him unless made at, after or so near the time of starting as to be a part of the *res gestæ*. Declarations made two or three days before *held* not to be of that character.

2. ——— : ——— : ———: ———.  Nor is it competent in such a case for
the officer to show that he ·was *informed* before making the levy that
the plaintiff had left the state; nor to show that after plaintiff had left
his place of residence his goods were found in a condition indicating an
intention to remove them from the town.

3. ——— : ——— : ———:  INSTRUCTION.    An instruction asked by
defendant (see opinion) *held* to have been properly refused, because it
was not warranted by the evidence, and because it was not in harmony
with the doctrine above set forth.  ·

4. **Evidence**: VALUE OF HOUSEHOLD GOODS: COMPETENCY OF OWNERS
TO TESTIFY TO.   A husband and wife who are the owners of ordinary
household goods may testify as to their value without proof of their
knowledge of the value of such goods.   Such knowledge will be pre-
sumed.

*Appeal from Harrison Circuit Court.*

THURSDAY, DECEMBER 17.

THIS action was brought against the defendant, Garrison,
as sheriff of Harrison county, to recover for damages alleged
to have been sustained by levy upon and sale made by the
defendant of certain household furniture alleged to be exempt
from execution.   There was a trial to a jury, and verdict and
judgment were rendered for the plaintiff.   The defendant
appeals.

*H. H. Roadifer*, for appellant.

*S. H. Cochran* and *J. H. Smith*, for appellee.

ADAMS, J.—I.   The defendant admitted the levy and sale,
at least in respect to some of the goods, but denied that they
were exempt, because, at the time of the levy,
the plaintiff had started with his family to leave
the state.   The defendant also pleaded that, even
if the plaintiff, with his family, had not started
to leave the state, he was estopped from denying
that he had started to leave the state, because he started on a
journey with his family and left the county, and, before start-

*1. EXECU-
TION: ex-
empt prop-
erty: owner
about to leave
the state: evi-
dence: estop-
pel.*

ing, informed divers persons that he was intending to leave
the state, which fact came to the defendant's knowledge, and
the defendant, believing the plaintiff's statement, and rely-
ing upon the same as true, made the levy in question. The
plaintiff demurred to so much of the defendant's answer as
set up an estoppel, and the demurrer was sustained. The
defendant assigns the ruling sustaining the demurrer as error.
In our opinion the court did not err. The defendant was not
justified in acting upon an expression of intention. It was
the plaintiff's right to change his intention, as the defendant
should have known.

II. The defendant introduced as a witness one Bolter,
who testified that about July 2 or 3, 1884, he had a conver-
THE SAME.          sation with the plaintiff relative to his leaving
the state. He was then asked to state what the
conversation was. But the court, upon objection by the
plaintiff, excluded the evidence, and the defendant assigns
the ruling as error. The plaintiff did not start upon his
journey until July 5th. A declaration of intention made after
he started, or so near the time of starting that the declaration
could be regarded 'as a part of the res gestæ, would have been
admissible as tending to characterize the act. But we think
the declaration was not made sufficiently near the time of
starting to be properly regarded as a part of the res gestæ,
and we know of no other ground upon which evidence of it
could be admitted.

III. The defendant offered to show by one Massie, his
deputy, that he was informed, before the levy, that the plaint-
iff had left the state. The evidence, under the
plaintiff's objection, was excluded, and we think
rightly. The plaintiff could not be held to lose his right of
exemption by reason of any information which an officer or
his deputy might receive.

IV. The defendant offered to show by one Copeland that,
after the plaintiff had started upon his journey, he went to the
THE SAME.          plaintiff's house, and found some of his furniture

boxed up, and clothing and bedding in a confused condition. The court, under the plaintiff's objection, excluded the evidence, and we think rightly. The condition of the plaintiff's furniture might indicate an intention to remove from that *town*, but we cannot say that it indicated anything more.

V. The defendant asked an instruction in these words: "If you find from the evidence that, prior to the time the officer levied upon the goods in question, the plaintiff had started to leave the state, then, in that case, the goods so levied upon were not exempt, and plaintiff cannot recover in this action. The word 'start' is not limited to the actual setting out upon a journey; it means as well the commencement of an enterprise or undertaking, and, in determining in this case whether plaintiff, prior to the time the goods in question were taken by the officer, started to leave the state, you should take into consideration the statement, if any, made by the plaintiff with reference to his intending to remove from the state; his acts and conduct; the disposition, if any, made of his property; the condition in which he left his dwelling; the condition of the furniture in the house; the statements, if any, made by him after his return as to where he had been." The court refused to give this instruction, and the defendant assigns the refusal as error. It may be conceded that the rule embraced in the first sentence of the instruction is correct. It may be conceded, also, that under *Graw v. Manning*, 54 Iowa, 719, the word "start" is not limited to the actual setting out upon a journey. But that case has, we think, no application to this. The plaintiff did not leave the state with his family, but went to Chickasaw county, where he remained with his father until November, and returned to Harrison county. The question was not as to when a person can be said to start to leave the state, where the intention to leave is conceded, and where, also, something had been done towards carrying the intention into execution. It was not necessary, therefore, to

Tubbs v. Garrison.

define the meaning of the word "start." The plaintiff denies
that he ever did anything with the intention of leaving; and
as to whether he had such intention, and commenced putting
it in execution, was a question for the jury, and was, we think,
properly submitted. The court instructed the jury that there
must at least be an attempted departure without the intention
of returning for the purpose of residence. Some of the circum-
stances, at least, mentioned in the instruction asked as indi-
cating an intention to leave the state we have already said
could not be so considered. The instruction, therefore, was
properly refused.

VI. The verdict and judgment were for $162.30. It is
insisted that the property was not of that value. It may be
4. EVIDENCE: conceded that, according to the testimony of the
value of
household disinterested witnesses, it would appear that the
goods: com-
petency of verdict and judgment were too large. But
owners to tes-
tify to. according to the testimony of the plaintiff and
his wife, it would appear otherwise, and we cannot disregard
their testimony. It is insisted, to be sure, that they were
not competent witnesses, because it did not appear that they
were acquainted with the value of such property. But the
property was ordinary household goods. It was such as all
housekeepers are accustomed to buy; and, while they may not
be the best judges of the value, we think that they may be
presumed to have such knowledge upon the subject as to
render them competent to testify upon it. We see no error
in any of the rulings of the court, and the judgment must be
                                                    AFFIRMED.