## M. C. THOMASON v. CAPITAL INSURANCE COMPANY, Appellant.

**Reformation: Mutual Mistake: INSURANCE POLICY.** It was intended to assign a policy to M. C. T. By mistake of agent, D. M. T., a nonexistent person, was named as assignee, and a renewal policy carried the same error. The company had no acquaintance with either M. C. T. or D. M. T. *Held,* a mutual mistake, rightfully to be reformed.

**SAME.** The original policy contained no warranty against stovepipes running through floors. The building insured, to the knowledge of the insurer, had such pipes until it was burned. A renewal was asked, stating no change in this regard. The renewal contained such a warranty, but no attention was called to the change in form, and insured had no knowledge of it until after the fire. The insurer retains the premium. *Held,* reformation as to such warranty is proper. *Stephens v. Co.,* 87 Iowa, 283, *distinguished.*

**SAME.** First policy described the premises as a frame house sixteen by eighteen, and *a log house, sixteen by eighteen,* two feet apart. A frame addition was, later, substituted for the log house. The renewal was asked on a frame house sixteen by eighteen and *a kitchen twelve by eighteen.* The renewal described the building by the description in the original. *Held,* properly reformed as to the description.

**Evidence on Value: Competency.** In an action on policy, assured and her husband may testify what furniture insured and burned was worth, without first showing knowledge as to value.

*Appeal from Louisa District Court.*—HON. D. RYAN, Judge.

FRIDAY, OCTOBER 12, 1894.

IN 1887, the firm of Hampe Brothers was the owner of forty acres of land in Louisa county, Iowa, on which there was a frame dwelling, sixteen by eighteen feet, and a log house of the same dimensions, the two buildings being two feet apart. Hampe Brothers obtained from the defendant company, January 12, 1887, a policy of

insurance on the two buildings, the policy fixing the
amount on the frame building at two hundred and
twenty-five dollars, and that on the log house at sev-
enty-five dollars.   On the twelfth day of March, 1887,
Hampe Brothers sold the land to the plaintiff, and she
gave to Hampe Brothers a mortgage thereon for six
hundred dollars, as a part of the purchase price.  Hampe
Brothers assigned the policy in blank, which was after-
ward filled out with D. M. Thomason as assignee.  The
assignment was approved by the company, and a slip
was attached to the policy making the same payable to
Hampe Brothers, as its interest might appear.  This
policy was numbered 5486.   The log house was torn
down by M. C. Thomason, and a frame addition twelve
by fourteen feet was built to the frame dwelling.  The
policy, after the transfers, was in the custody of Hampe
Brothers; and in February, 1890, W. D. Thomason,
the husband and agent of M. C. Thomason, went to
Hampe Brothers to have the policy renewed, and Hampe
Brothers took the policy to Titus & Jackson, agents for
the company, who obtained from the company the
policy in suit, purporting to issue to D. M. Thomason
upon two buildings as described in the other policy
(which was surrendered), and for the same amount.
The latter policy differed from the former in this: that
it contained a warranty by the assured "that no stove-
pipes run through the sides or roof of the building or
into garret or attic or loft before entering the chimney."
This latter policy was made payable to Hampe Broth-
ers, as its interest might appear, and the policy was
taken and held by the firm until the property was lost
by fire, on the fifteenth day of August, 1890.   This
action is on the latter policy, and payment is resisted
under a claim that there is no contract of insurance
between plaintiff and defendant, because the policy is
issued to D. M. Thomason, and that there is a breach
of the warranty that no stovepipes ran through the

sides or roof of the building, and because of the change in the property. In avoidance of these claims, the plaintiff pleaded that the name of D. M. Thomason was inserted by mistake when M. C. Thomason was intended; and, as to the breach of the warranty, that the original contained no such a provision; and that the provision in the latter policy was by mistake; and asked that the policy be reformed to conform to the intention of the parties. The cause was tried as an equity action, and the district court found the issues for the plaintiff, and gave a judgment for her for the full amount of insurance. Other facts will be noticed in immediate connection with the particular questions considered. The defendant appealed.—*Affirmed.*

*Read & Read* for appellant.

*C. A. Carpenter* and *F. M. Molsberry* for appellee.

GRANGER, C. J.—I. At the time the policy was renewed, the plaintiff, M. C. Thomason, with her husband, W. D. Thomason, lived on the land, and occupied the building insured. There was no such person known as D. M. Thomason. Neither plaintiff nor her husband was personally known to the officers of the company, nor to its agent, Titus & Jackson. The business was done through Hampe Brothers, and the name of D. M. Thomason first appears when the blank assignment of the first policy, made by Hampe Brothers to the plaintiff, was filled up. How it happened that the initials "D. M." were used instead of "M. C." is not known. It is quite certain that the blank was filled in by Jackson, of the firm of Titus & Jackson; but whose mistake it was in changing the initials, there is no means of knowing, and we do not think it important. There surely was a mistake, and Hampe Brothers and Titus & Jackson intended to insert the name of *the* Thomason who owned the land

and sought the insurance. Of this there is no room
for doubt. No written application was made for the
renewal, and Titus & Jackson merely wrote a note to
the company, stating that they desired a renewal, for
three years, of the policy transferred by Hampe Broth-
ers to D. M. Thomason. The company surely intended
to insure some person on the property described. As
it had no personal knowledge of the person to be insured,
so that its acts could be influenced by such knowledge,
it could have regarded the name only as representing
the person actually applying for the insurance. The com-
pany intended to issue a policy to the person to whom
Hampe Brothers had assigned the former policy. That
person was M. C. Thomason. She purchased of Hampe
Brothers the land and the insurance. "D. M.
Thomason" was mistakenly written as her name in the
assignment of the old policy, and the same is true in
the issuance of the new policy. The court properly
reformed the contract in this respect.

II.   It is urged that, even if there was a contract,
it is not such an one as a court of equity will reform,
because the mistake is not mutual. We think
the mistake was mutual, in this: that both par-
ties intended the insurance to be for the benefit
of the owner of the property. By a mere mistake of a
name, not as to the person, under appellant's conten-
tion, the policy issued to no one, and hence there was
no insurance. The company received its premium,
and pretended to issue a valid policy. If it knew the
facts, and intended no insurance, it is too dishonest to
be deserving of consideration in a court of equity. If
it was honest, it intended, by issuing the policy to D.
M. Thomason, to issue it to him as the owner of the
property; and, if there was no D. M. Thomason, it had
no intention as to such a person, and in reason its inten-
tion must have been as to the person for whom the
name was mistakenly written. If so, the placing of a

wrong name in the policy was a mistake against which a court of equity will grant relief.

The plaintiff further asks that the policy be reformed so as to exclude the warranty as to the stovepipe running through the side or roof of the building, etc. The particular facts important in this respect are these: Plaintiff desired a renewal of the policy which she held. That policy was in the custody of Hampe Brothers, because payable to the firm as its interest should appear. At her instance, Hampe Brothers solicited a renewal from Titus & Jackson, as agents of defendant. Titus & Jackson received and forwarded the old policy to the company, with a letter from Titus & Jackson, stating that they desired a renewal for three years, saying: "Send the policy to us, and we will remit the premium." It was so sent, and was by Titus & Jackson delivered to Hampe Brothers, who retained it till the loss occurred. In the new policy was this warranty, not contained in the former policy. As a matter of fact, the change was unknown before the fire to either Hampe Brothers or the plaintiff.

Appellant claims that the company had the right to insert new conditions in the policy, and that it is only bound by the contract as it proposed to make it. We understand it to be appellant's theory that the company could issue its policy, on an application for a renewal, differing from the former policy, and that the assured could accept or reject it in its changed condition as she might think best, but that there would be no contract of insurance except under the terms of the policy as it issued; and *Stephens v. Insurance Co.*, 87 Iowa, 283, 54 N. W. Rep. 139, is relied upon to support the rule. Neither the authority cited nor the claim of appellant meets the question we are considering. The question we have is this: Did both plaintiff and defendant intend the new policy to be, in respect to the

warranty, like the former one? That the plaintiff did there can be no question. She knew that the stove-pipe did pass through the floor, and she had insurance with her house in that condition. She asked that the policy be renewed, and, in doing so, she made no statement that the situation was changed. The company issued its policy so changed as to make it absolutely void under existing facts without such a policy being solicited, and when, had its terms been actually known, it would not have been accepted. It knew that the premium was in the hands of its agent, and it sent the policy, retaining the former one, without a word or an intimation that it was not as applied for, to be delivered; and it was delivered, and the company received its premium. If the company did this believing that, in so doing, it was renewing the former policy in all respects, where the application did not indicate a change, it was honest. If it was done with a view to impose such a policy on the plaintiff, in case the change was not discovered it was dishonest. The sending of a policy so changed, without calling attention to the fact, and accepting the premium as if the transaction was completed, does not accord with ordinary or fair business experience. We are better prepared to accept the conclusion that the company, in issuing the second policy, did not have in mind the fact that, between the two dates of issue, it had changed its form of policy, and inserted new conditions, than that it designed a fraud upon the plaintiff. If the company intended to renew the policy under the application made, then there is a mistake that should be corrected. In the *Stephens case*, *supra*, the policy had not been delivered by the agent, and there is nothing to indicate but that the company communicated the facts as to the variance of the policy from the application made, and intended that they should be known when the policy was delivered. That was not a case to reform the contract.

III.   It will be remembered that, when the first policy was issued, it was upon two buildings, one a frame and the other a log house. Before the second application was made, the log house was torn down, and a frame addition placed to the other building, and the last policy describes the property insured the same as the first; and it is urged that the policy is invalid because of a failure to notify the company of the change. It seems to us that the company was informed of the change.   As we have said, the old policy was returned by Titus & Jackson, with their letter requesting a renewal.   The letter is as follows:

"MUSCATINE, IOWA, February 7, 1890.
"*Capital Insurance Company:*

"GENTLEMEN:—Inclosed please find policy 5486, Hampe Brothers transferred to D. M. Thomason, which we would like to have renewed for three years from February 27, 1890. There is a mortgage of six hundred dollars on the farm, which runs five years.   The house is 16x18, one story, and kitchen, 12x18.   Send policy to us, and we will remit the premium.

"Yours, truly,
"TITUS & JACKSON, Agents."

In the original the frame building was described as "16 by 18," and then a log house, "16 by 18."   In the letter, the log house is not mentioned when there is an attempt to give the dimensions, but a kitchen of different dimensions is expressed.   With the letter and the old policy it was plainly to be seen that the insurance was asked to be renewed only as to one building.   Mr. Jackson, who wrote the letter, in his testimony says that, while he does not recall anything being said about the change, something was likely said, because he specified the dimensions of the kitchen in his letter, and he knows of no other way that he could have got the information.   We think the variance in the policy was a mere oversight or mistake.   The questions con-

sidered cover, substantially, the complaints as to the validity of the policy, and we think the action of the court in reforming the policy is fully warranted by the evidence.

IV. After the policy issued, by indorsement thereon, it was made to cover one hundred and fifty dollars "on household furniture and provisions." To prove the value of the articles burned, the plaintiff and her husband were used as witnesses, and no others.

A list of the articles had been prepared, and was in court. After stating that the furniture was burned, the husband was asked: "What was the furniture worth?" There was an objection that he had not shown himself qualified, which was overruled, and he answered: "It was worth three hundred dollars." Similar questions were asked the plaintiff, and she fixed the value of the same, being the value shown by the list. The ruling of the court in admitting this evidence is urged as error. It has support in the case of *Tubbs v. Garrison*, 68 Iowa, 44, 25 N. W. Rep. 921.

The judgment is AFFIRMED.