## H. D. RYAN et al., Appellees, v, E. C. COOPER, Appellant.

**EVIDENCE:** Documentary Evidence—Bank Ledger.  It is not erroneous to receive in evidence the ledger of a bank for the purpose of showing the credits of a depositor, the correctness of such book being first established; and it is immaterial that the account reveals credit items not in controversy.

1

**TRIAL:** Instructions—Undue Burden—Curing Error.  An error in imposing an undue burden on a litigant may become inconsequential in view of the record and in view of the fact that the instruction is unduly favorable to complainant.

2

**EVIDENCE:** Opinion Evidence—Incompetency of Owner of Property.  Proof of ownership is ordinarily prima-facie proof of qualification on the part of the owner of property to testify to the value thereof, but not so when the record *negatives* such qualification.  So held as to the value of corporate stock.

3

**EVIDENCE:** Relevancy, Competency, and Materiality—Inapplicable Testimony.  Testimony that a corporation was insolvent when it was placed under receivership is not, in and of itself, competent to establish insolvency of the corporation a year previous to the receivership.

4

Headnote 1:  22 C. J. p. 899 (Anno.)  Headnote 2:  4 C. J. pp. 918, 919.  Headnote 3:  22 C. J. pp. 524, 694, 695.  Headnote 4:  22 C. J. pp. 92, 175.

*Appeal from Jasper District Court.*—H. F. WAGNER, Judge.

OCTOBER 20, 1925.

REHEARING DENIED JANUARY 22, 1926.

THE plaintiffs brought an action upon a promissory note. The defendant presented a defense of partial payment to the amount of $800, and a counterclaim for $600 damages for false representations not connected with the execution of the note

sued on. At the close of the evidence, the trial court directed a dismissal of the counterclaim for damages, and submitted to the jury the defense of partial payment. There was a verdict and judgment for the plaintiffs, and the defendant appeals.— *Affirmed.*

*Campbell & Campbell,* for appellant.

*Cross & Hamill,* for appellees.

EVANS, J.—I. The plaintiff H. D. Ryan was the payee of the note sued on. It was given by the defendant for the purchase price of an automobile, and was for $1,800. The defend-

1. EVIDENCE: documentary evidence: bank ledger.

ant claims that he made a payment of $800 thereon, on May 13, 1920. We will consider first the questions which arise on the trial of that issue. It appears without dispute that, prior to May 13, 1920, the note in suit had been deposited by Ryan, as collateral, with the State Bank of Prairie City. On the date named, the defendant drew his check for $800 on the First National Bank of Prairie City. This check was drawn payable to H. D. Ryan, and was left with Buckley, cashier of the State Bank of Prairie City. The defendant testified that he instructed Buckley to apply this check upon the note in suit. No such application was made of the check. Buckley, as a witness, explained this check transaction as follows:

"* * * May 13, 1920, Cooper had some money in First National Bank which he wanted to transfer to his checking account in our bank, but didn't want to let the other bank know he was checking it directly to our bank, and he asked could I make the check to H. D. Ryan, which was done [Exhibit 1], to blind the other bank as to where the money was going. The check was written at our bank, and I called Mr. Ryan about it and explained the circumstances to him, and he indorsed the check, and I passed the check to Mr. Cooper's account on his ledger page."

In corroboration of this testimony, the witness produced the bank books showing the ledger pages of the defendant's account. The defendant had been a regular customer of the bank for many years. These books showed that a credit of $800

to the defendant was entered in his account on the date named, and for the check in question. The errors assigned by the appellant upon this branch of the case challenge the competency of the bank books in this connection, on the ground that some of the entries appearing therein were made by other persons than the witness. There are several patent reasons why the point made is not well taken. Before offering such pages, the witness identified the book, and testified without objection that the entries therein were correct, to his personal knowledge, at the time they were made, and that the item of $800 appearing thereon to the credit of the defendant was entered by the witness personally. This was the one item material to the controversy. Other items were material only as identifying the current account of the defendant. There was no error in admitting the book for the purpose of showing this credit in the defendant's account.

II. Complaint is made of Instruction 5 given by the court:

"The burden is upon the defendant to establish his claims as to said partial payment of $800 by a preponderance of the evidence. Therefore, if you find from a preponderance of the evidence that the check Exhibit No. 1 J. O. L. was delivered by the defendant to John R. Buckley, cashier of the State Bank of Prairie City, with intention on his part that the said check be applied upon the note Exhibit 'A' J. O. L., and with direction or instruction by the defendant to the said John R. Buckley as said cashier that it be so applied, and that John R. Buckley received said check for H. D. Ryan, or that H. D. Ryan received the money represented by said check, then you will be warranted in finding that, on May 13th, 1920, the defendant made a payment of $800 on the note Exhibit 'A' J. O. L. If you fail to so find, then you will not be warranted in finding a payment of $800 on said note on said date."

2. TRIAL: instructions: undue burden: curing error.

The complaint is that undue burden was laid upon the defendant to prove that H. D. Ryan got the benefit of the check.

It is true that the indorsement of the check by H. D. Ryan was sufficient presumptive evidence that he got the benefit of the check. But in the light of the whole record, the instruction was rather more favorable to the defendant than he was en-

titled to. Ryan testified that he indorsed the check at the request of Buckley for the purpose indicated in Buckley's testimony, and that he had no conversation at all with the defendant on the subject. After Buckley and Ryan had testified on this subject, the defendant was called to the witness stand. His testimony was confined to other subjects than that of the $800 check. He made no response to the testimony of Buckley or to that of Ryan. Such testimony of these witnesses was therefore undisputed, unless it could be said that the defendant had disputed the same in advance, when on the witness stand in his main case. It appears from his cross-examination at that time that he had a pass book with the bank, but he did not produce it. Manifestly, such pass book would either contradict or confirm the books of the bank. If he did not receive credit in his account for the $800 check, his pass book would show it. In proving his main case, the defendant did testify, in his direct evidence, that he told Buckley to apply the check on Ryan's note. But on the question whether he got credit therefor in his account, he volunteered no testimony, either in opening his case or in rebuttal. His sole testimony on that subject is contained in his cross-examination when first called upon the witness stand, wherein he testified as follows:

"I do not know that the $800 was credited to my account in the State Bank. I received statements from the State Bank, and they at times showed deposits and withdrawals, but I do not know that they always did. I did not look all those statements over. *Even if this check for $800 was deposited to my credit, it was made to Mr. Ryan, for Mr. Ryan, and he should be charged with it.*"

The foregoing sums up the defendant's conception of his right to this item.

III. The defendant presented a counterclaim for damages for false representations. His testimony was that he was induced to buy $600 worth of stock in the Wilson Rubber Company, upon certain representations made to him by the plaintiff H. D. Ryan. He predicated his measure of damage upon the worthlessness of the stock and the insolvency of the company at the time he subscribed for his shares. At the close of his evi-

3. EVIDENCE: opinion evidence: incompetency of owner of property.

dence, the district court dismissed the counterclaim, for want of any proof of the insolvency of the company or of the worthlessness of the shares at the time of the purchase. The defendant bought in February, 1920. At that time the company was a new concern, engaged in no other activity than the floating of its stock. Its assets consisted only of the proceeds of stock sales. In February, 1921, it went into the hands of a receiver. Defendant offered, as a witness, to testify that in his opinion the stock purchased by him was worthless at the time of the purchase, and that the company was then insolvent. This offer was preceded by no preliminary showing of qualification other than that by his purchase he had become *owner* of the stock. Objection to the testimony was sustained by the court on the ground of lack of qualification to express an opinion. Error is assigned upon this ruling. The contention is that the owner of property may testify to his opinion of the value of the property. The general rule to that effect may be conceded. But it is presumptive only. It is predicated upon the theory that the owner of property is usually in a position to judge or know the value of the same. The rule so stated does not dispense with proof of qualification. It only accepts the proof of ownership as prima-facie proof of qualification, in the absence of negative circumstances. The rule is not intended to negative the discretion of the trial court as to the sufficiency of the proof of qualification. The record in this case not only fails to show any qualification on the part of the defendant, as a witness, to know or judge the value of the stock in February, 1920, but it shows affirmatively that he had no such knowledge. All the information that he had in 1920 was to the effect that his stock was worth the amount he paid for it. He testified on cross-examination that he never personally made a later investigation, but that his attorneys made an investigation in the year 1923. The court properly ruled that his offered opinion was not admissible, upon such qualification.

The defendant then called the receiver of the corporation as a witness. This witness went into the possession of the corporation in February, 1921. The defendant offered to show by

4. EVIDENCE: relevancy, competency, and materiality: inapplicable testimony.

this witness that at such time the corporation was insolvent. He did not offer to show by this witness that it was insolvent in February, 1920. Nor did he offer to show that this witness had any opinion as to the condition of the company in February, 1920. Though evidence of the insolvency in February, 1921, might have been admissible as corroborative of other evidence tending to show insolvency in February, 1920, yet proof of insolvency in February, 1921, did not of itself constitute proof of insolvency in February, 1920.

What the defendant offered to prove by the receiver as a witness, he also offered to prove by the former secretary of the corporation. He did not offer to show by this witness that the corporation was insolvent in February, 1920. It did appear, however, from the testimony of this witness that in February, 1920, the corporation had not yet embarked in business, and that its property consisted of about $400,000 of proceeds of sale of corporate stock. This offer was rejected by the court in like manner as the former. In so ruling, the court did not err. It necessarily follows that the court properly dismissed the counterclaim for want of proof of any measure of damage. We find no prejudicial error in the record.

The judgment below is, accordingly, affirmed.—*Affirmed*.

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.