STATE of Iowa, Appellee,

v.

Kenneth B. SAVAGE, Appellant.

No. 62672.

Supreme Court of Iowa.

Feb. 20, 1980.

David F. McCann, Council Bluffs, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., David E. Richter, Pottawattamie County Atty., and Patrick M. Carr, Asst. Pottawattamie County Atty., for appellee.

LARSON, Justice.

This defendant has appealed from a conviction of second-degree theft, in violation of section 714.2(2), The Code. He raises issues as to the sufficiency of the proof of valuation necessary to establish the grade of the offense and as to the propriety of certain instructions. We affirm the trial court.

I. *Valuation of the Stolen Items.* Eight locomotive radiator cores were involved in this theft, and it is the sufficiency of the evidence as to their value which gives rise to the first issue. To constitute second-degree theft, the property involved must be valued at more than five hundred dollars and less than five thousand dollars. "Value" of the property is defined by section 714.3 to be "its normal market or exchange value within the community at the time that it is stolen." We interpret this language to be a restatement of our prior statute, section 709.2, The Code 1977, and the cases under it, *e. g., State v. Boyken,* 217 N.W.2d 218 (Iowa 1974), as they pertain to determination of value in a larceny case. Value under our prior law was interpreted to be market value, and in the absence of a regular market, its actual value. *Id.* at 220.

The defendant contends that the State failed to produce any admissible evidence that the value of the property exceeded five hundred dollars. The evidence on value consisted solely of testimony by the storekeeper for the Chicago & North Western Transportation Company, which owned the radiator cores. His duties included "purchasing, storing, issuing and controlling anything to do with company material." Radiator cores for locomotives, both new and used, were included in the property controlled by him. On direct examination he testified that the stolen cores included one new one and seven rebuilt ones. The value of the new core was $370.00, according to him, and this was not disputed. The disagreement on value determination arose only as to whether the seven rebuilt cores were shown to be worth a total exceeding $130.00, so as to raise the total amount of the theft to over $500.00. The storekeeper testified that the cost of rebuilding the cores, which were still in the boxes from the repair service when they were stolen, had been $118.00 each. Then, in response to the question whether it is possible to "go into the market place and buy a rebuilt core without having your own to send in and have rebuilt," he testified that "I don't know whether you can, but the railroad

does not do that. . . ." He later testified that he had a "personal opinion of their value," and, over objection, stated the value of a rebuilt core would be approximately $25.00 less than a new one. Later, upon cross examination, he testified to a lack of knowledge as to "what they would bring on the established market." Defendant moved to strike his testimony on the basis that the witness admittedly did not know the market value of the used cores and therefore testified only as to "speculation and conjecture." The motion to strike was overruled.

■ On appeal he contends it was error to permit the storekeeper to testify to the actual value of the rebuilt cores based upon their cost of rebuilding because market value is the proper measure. Actual value, he contends, may be resorted to only upon a showing of the absence of market value for the items. We agree that this is a correct statement of the general principle of law, but do not agree that the evidence was inadmissible here.

■ Several general rules pertaining to opinion evidence should be recognized at the outset. Value testimony is liberally received, with its weight to be determined by the jury, McCormick, *Opinion Evidence in Iowa*, 19 Drake L.Rev. 245, 255 (1970), and rules as to competency of witnesses on questions of value are "always liberally construed." *City National Bank v. Jordan*, 139 Iowa 499, 504, 117 N.W. 758, 760 (1908). *Accord*, 3 J. Wigmore *Evidence in Trials at Common Law* § 716(2), at 54 (Chadbourne rev. ed. 1970) ("Here the general test, that *any one familiar* with the values in question may testify, is liberally applied. . . ." (Emphasis in original.)). Even the term "market value" has been broadly defined. *See, e. g., Maytag Company v. Partridge*, 210 N.W.2d 584, 587 (Iowa 1973) ("Market value" or "fair and reasonable exchange" reflects transactions "both on organized markets and by occasional sales."). A broad approach to admissibility of opinion testimony by lay witnesses is also reflected by Federal Rule of Evidence 701, which requires only that it be "(a) rationally based on the perception of the witness and (b)

helpful to a clear understanding of his testimony or the determination of a fact in issue." Principles concerning valuation opinions expressed in civil cases, several of which are referred to below, are applicable as well to criminal cases. *See State v. Boyken*, 217 N.W.2d 218, 220 (Iowa 1974).

Although defendant insists the testimony of this witness was erroneously addressed only to actual value of these items, we note that it was actually couched in terms of market value. The record shows this:

> Mr. Carr [prosecuting attorney]: You may answer. You stated you have an opinion. My question, now, is what is your opinion of the *fair market value* of a rebuilt radiator core?

> The Witness: Yes. Even though the rebuilt radiator core is somewhat—the life of it is somewhat less than a new one, I would say it would run approximately $25 less than a new one would. (Emphasis added.)

■ Defendant contends the witness lacked sufficient knowledge of the market value to allow him to testify to it, based upon his own conservative view of his qualifications. The important issue, in any event, is not whether the storekeeper considered his knowledge to be sufficient, but whether the court did. The court obviously concluded the foundation was sufficient notwithstanding the witness' own modest view of his credentials. We cannot say the court abused its discretion. In any event, even if we assume the witness testified only as to actual value, it was properly received because of the close relationship of the witness to the property, tantamount to that of an owner, and because of the unique quality of the property itself, both factors obviating the need for a preliminary showing of the absence of market value.

The general rule is that an owner may testify as to actual value without a showing of general knowledge of market value. *See Boyken*, 217 N.W.2d at 220; *Kohl v. Arp*, 236 Iowa 31, 35, 17 N.W.2d 824, 826 (1945); *Jordan*, 139 Iowa at 505, 117 N.W. at 760 ("Ownership and possession of personalty afford some ground for the presumption of

capacity to speak as to its value."); Wigmore, *supra*, at 56.

The primary reason for admitting such an estimate of value is that of necessity, the owner necessarily knowing something about the quality, cost and condition of the article, and it often being impossible to produce other witnesses having the requisite knowledge upon which to base an opinion. *But the rule of admissibility is more frequently predicated on the presumption that the owner, being familiar with his property, knows what it is worth.*

31 Am.Jur.2d *Expert and Opinion Evidence* § 137, at 682–83 (1967) (emphasis added).

The appellant here seeks to restrict the application of the rule to actual owners, contending that the storekeeper here was not competent to testify to actual value despite the fact he was familiar with the property involved, the cost of new cores, and the comparable values of new and rebuilt ones. However, analysis of the reasons behind the rule shows that the presumed competency of an owner arises out of his peculiar knowledge of the "quality, cost and condition" of the property, rather than actual ownership. This is implicit in *Appeal of Dubuque-Wisconsin Bridge*, 237 Iowa 1314, 1320, 25 N.W.2d 327, 330 (1946), which held that the rule that an owner may express an opinion on actual value is not applicable to an officer of a corporation unless "he has knowledge of such values as qualifies him in fact."

The rationale of the rule also suggests that other persons having the requisite knowledge might also be presumed to be competent to establish value, even if not the owner. In *Boyken*, for example, a store manager was allowed to testify as to the value of stolen records, because his "lack of knowledge of the market value of such records between individuals on the street . . . would not render him incompetent to testify to the market value of *these* new records on the shelves from which they were stolen." 217 N.W.2d at 221 (emphasis added). In that case, we concluded that actual wholesale and retail prices of the stolen property, testified to by a person not the owner, were relevant on the matter of value.

*Jeffries v. Snyder*, 110 Iowa 359, 81 N.W. 678 (1900), involved a suit by the owner of goods against a warehouseman. The owner and another person who had had possession of and had used some of the household goods both testified as to their value. The extension of the "owner" rule to others having sufficient knowledge of value is apparent in this language:

One need not show any special qualification to enable him to express an opinion as to the value of articles in common domestic use, especially if he owns *or has used* the same. The relaxation of the rule usually applied to opinion witnesses is required by necessity. Often no other evidence than that of the owner or *possessor* can be procured.

110 Iowa at 362, 81 N.W. at 679 (emphasis added). *See also Travelers Indemnity Company v. Plymouth Box & Panel Company*, 99 F.2d 218, 223 (4th Cir. 1938) (president of company, as "owner's representative" permitted to testify to value because he was "familiar with the particular machine [a steam generator] in operation for several years").

■ Applied to the facts of this case, the storekeeper had knowledge of the cost of new cores and the cost of rebuilding them, and he was familiar with these specific cores. His knowledge regarding value was at least the equivalent of a mere user of goods as in *Jeffries*; it was almost certainly superior to that of the "railroad," which has the actual owner of the cores. The "owner" rule is based largely on necessity and practicality. 31 Am.Jur.2d, *supra*, at 682–83. Who in this case would likely be any more knowledgeable than this storekeeper? Under these circumstances, the testimony on value was "rationally based" on the witness' perception and knowledge and was properly admitted. *See* Fed.R. Evid. 701.

■ Aside from the witness' presumed competency to testify to actual value based upon the rationale of the "owner" rule, this testimony was properly admitted upon an-

other basis—the nature of the property itself. The general rule is that if the property has no regularly established market value, actual value may be presented in lieu of it. *See, e. g., McMahon v. City of Dubuque,* 107 Iowa 62, 64, 77 N.W. 517, 518 (1898) ("Such [household] property has no recognized market value, and recovery must be based on its actual value."); *State v. Hathaway,* 100 Iowa 225, 226, 69 N.W. 449, 449 (1896) (larceny case; actual value testimony held proper despite fact the witness lacked knowledge of market value of household contents); *Travelers Indemnity,* 99 F.2d at 221 (exception to "market value" rule recognized as to valuation of used steam generator). As stated in 50 Am.Jur.2d *Larceny* § 45, at 211 (1970):

> Where the property taken has a unique or restricted use and an extremely limited or no market value, its actual worth or value has been declared the proper criterion of value . . . although some courts have recognized the replacement cost as a standard of value in such a case.

*Accord, State v. Randle,* 2 Ariz.App. 569, 410 P.2d 687 (1966) (electric transformers in larceny case valued by actual or replacement value, rather than market value, because of their "very nature"); *People v. Renfro,* 250 Cal.App.2d 921, 925, 58 Cal. Rptr. 832, 835 (1967) (telephone cable valued in larceny case through evidence of replacement cost, under rule that "where . . . property has a unique or restricted use and an extremely limited market, the actual or replacement cost to the one from whom it was stolen is its fair market value").

█ Defendant contends that, even assuming the actual value may be substituted for market value in some cases, it was not proper here, because the storekeeper's testimony that "I don't know whether you can [go into the market place and buy a rebuilt core]" is not sufficient to establish a lack of a regular market and proof of actual value would therefore not be permitted. He contends, in effect, that establishing the lack of a regular market is a condition precedent to introduction of evidence of actual value. As foundation for this opinion testimony,

specific evidence need not be presented to the court to establish the absence of a market for certain items; the court may, in such cases, assume that no such market exists. The general rule is stated in 29 Am.Jur.2d Evidence § 79, at 111 (1967):

> The courts will not, as a general rule, take judicial notice of the value of particular parcels of realty or articles of personal property, since innumerable factors affect their value. *However, the courts will take judicial notice of certain matters or facts of general knowledge which affect the value of real and personal property. For example, the courts have taken judicial notice of the fact that stock in a closed or closely held corporation has no recognized standard market value . . . .*

(Emphasis added.) Accord, 1 *Wharton's Criminal Evidence* § 85, at 136 (13th Ed. 1972).

█ This court may judicially note such facts for the first time on appeal, the trial court being "regarded as having silently assumed its existence in rendering the judgment." Ladd & Carlson, *Cases and Materials on Evidence* 12 (1972). *See also State v. Theodore,* 260 Iowa 1038, 1045, 150 N.W.2d 612, 616 (1972) (no value evidence in prosecution for larceny of meat; held jury could have based finding on common knowledge and experience in view of large quantity involved); *Ross v. United States,* 374 F.2d 97, 103 (8th Cir. 1967) (appellate court judicially noted social security checks were mailed first class, with returning instructions on envelope). Judicial notice has been applied by other appellate courts in resolving valuation issues. In *Niagara Fire Insurance Company v. Pool,* 31 S.W.2d 850, 852 (Tex.Civ.App.1930), for example, the court held that market value of household goods need not be established and said "[n]or was it incumbent upon plaintiffs to show first that there was no market value of said property before they could prove intrinsic value. In the very nature of things, personal effects composing the furnishings of a family and household do not, for the most part, have an ascertainable

market value . . . ." Similarly, in *Wright Titus, Inc. v. Swafford*, 133 S.W.2d 287, 296 (Tex.Civ.App.1939), the court said that "the court judicially knows that odd pieces of secondhand table silverware do not ordinarily have a market value."

In the present case, rebuilt radiator cores for diesel locomotives might not be as unique as some items as to which traditional "market value" approach to valuation has been abrogated. *E. g., State v. Doepke*, 68 Mo. 208 (1878) (theft of used coffin; actual value allowed in view of limited market). However, they certainly must be viewed as having at least as restricted a market as that for transformers and telephone cable, as in other of the cases above.

In view of the unique relationship of this witness to the property to be valued and the limited market for the property, which we judicially note, opinion on actual value was properly admitted. This is consistent with our established precedents and further advances the modern concept of opinion evidence.

II. *Jury Instructions on Flight.* The trial court submitted the following instruction on flight:

If you find the offense charged in the Information was committed, and that the defendant thereafter fled from the scene of the crime for the purpose of avoiding or retarding prosecution, then such flight is a circumstance you may consider in determining the guilt or innocence of the defendant.

The credit and weight, if any, to be given such circumstance is for the jury to determine from a consideration of all the evidence in the case.

The defendant argues that this instruction violates due process because it allows the jury to find the fact of flight by a preponderance of the evidence rather than beyond a reasonable doubt.

The prosecution's duty to establish guilt beyond a reasonable doubt is discussed in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970), where the Supreme Court said: "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Subsequent cases indicate that a "necessary fact" within the contemplation of *Winship* is one which is an element of the crime. *See, e. g., Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281, 295 (1977) ("*Mullaney* surely held that a state must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense."); *Mullaney v. Wilbur*, 421 U.S. 684, 687, 95 S.Ct. 1881, 1884, 44 L.Ed.2d 508, 513 (1975) ("[M]alice aforethought was an essential element of the crime of murder—indeed . . . it was the sole element distinguishing murder from manslaughter. [T]his Court's decision in *Winship* requires the prosecution to prove the existence of that element beyond a reasonable doubt."). Our own cases have so interpreted *Winship*. *E. g., State v. Lewis*, 242 N.W.2d 711, 719 (Iowa 1976) ("In other words, before it can secure a conviction the State must demonstrate to the jury beyond a reasonable doubt each essential element of the alleged offense."); *cf. State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977) (lack of intoxication not an element of crime but merely a consideration in determining whether State has carried its burden of proving the element of specific intent beyond a reasonable doubt).

Since flight is not an element of this offense, there is no constitutional requirement that it be found by proof beyond a reasonable doubt. The only requirement is that when it considers all the evidence, including the fact of flight, the jury must be convinced of all the elements of the crime beyond a reasonable doubt.

III. *Proof of Value Beyond a Reasonable Doubt.* The trial court instructed the jury:

If you find the Defendant guilty of theft, your next duty is to determine the degree of theft . . . ..

In answering this interrogatory, you must find the value of the property taken. . . .

The following are definitions of degrees of theft:

1. The theft of property exceeding one hundred dollars in value but not exceeding five hundred dollars is theft in the third degree.

2. The theft of property exceeding five hundred dollars in value but not exceeding five thousand dollars is theft in the second degree.

The burden is on the State to prove by evidence beyond a reasonable doubt the degree of theft by establishing the value of the property within the limits set forth in the interrogatory.

The Defendant argues that a "literal" reading of the last paragraph allows the jury to find value by a preponderance of the evidence and thereafter apply that figure to the interrogatory to find degree of theft beyond a reasonable doubt.

■■■■ It may be conceded that by rearranging the last paragraph to place "beyond a reasonable doubt" immediately before "the value," the potential for misunderstanding would have been totally eliminated. Yet, a defendant does not have the right to have instructions submitted in any particular form. It is only required that the instructions actually submitted set forth the law fairly. *E. g., State v. Tensley*, 249 N.W.2d 659, 662 (Iowa 1977). We do not believe the instruction is reasonably susceptible to the interpretation advanced by the defendant. The challenged paragraph clearly charges the jury to find the facts beyond a reasonable doubt.

■■■■ IV. *Instructions Involving Lack of Evidence.* A proper reasonable doubt instruction must point out that such a doubt may arise not only from the evidence in the case, but also "from a lack or failure of evidence produced by the State. . ." Iowa Uniform Jury Instruction No. 108. *See, e. g., State v. Boyken*, 217 N.W.2d 218, 219 (Iowa 1974). Defendant concedes that the trial court instruction on reasonable doubt included this caveat. However, he

argues that those words were negated by other instructions given. One instruction provided in part:

You will therefore carefully consider and weigh all of the evidence offered and submitted to you upon the trial and all of the facts and circumstances disclosed by the evidence which throw light upon the question of whether or not the defendant is guilty of the crime charged in the Information in this case.

You are the sole judges of the facts in this case. That is you must determine what facts are shown by the evidence. You are also the judges of the weight of the evidence and of the credibility of the witnesses who have given testimony before you.

You should remember in this connection that the object is to reach the very truth of the matters in controversy, and that the witnesses in their testimony are the only means you have of arriving at the truth.

In deliberating upon your verdict, you must not consider nor discuss any matters outside of the evidence and these Instructions, but base your verdict solely upon the evidence and the law as here given, and just and reasonable inferences therefrom.

The other provided in part:

[W]hatever counsel may say, you will bear in mind that it is your duty to be governed in your deliberation by the evidence and by the law as given you by the Court in these instructions, and you should seek to arrive at the very truth of the matter without sympathy, bias, passion or prejudice.

The general rule is, of course, that instructions are to be read and construed as a whole.

■■■■ This court has held that the general rule was inadequate to cure the defect where the reasonable doubt instruction itself contained no reference to a lack of evidence, even though that reference appeared in other instructions. *State v. Parkin*, 230 Iowa 991, 994, 299 N.W. 917, 919

(1941). However, it appears that *Parkin* was based on the peculiar importance of the reasonable doubt instruction. The following year this court addressed a case involving an objection very similar to the one presently advanced. In an opinion noting *Parkin*, this court ruled that failure to refer to a lack of evidence in other instructions does not "nullif[y] the effect of its use" in the reasonable doubt instruction. *State v. King*, 232 Iowa 16, 19, 4 N.W.2d 244, 246 (1942). We adhere to our ruling in *King* and hold that this assignment is without merit.

We find no error under any of the issues raised and therefore affirm the judgment.

AFFIRMED.

All Justices concur except ALLBEE, J., REYNOLDSON, C. J., and LeGRAND, J., who dissent.

ALLBEE, Justice (dissenting).

I am constrained to dissent from division I and the result.

During the early hours of May 13, 1978, eight diesel radiator cores were stolen from a boxcar of the Chicago and North Western Transportation Company at its Council Bluffs yard. Defendant was subsequently charged and convicted of theft in the second degree. Of the eight cores stolen, one was new and seven were rebuilt. Defendant contends that trial court erred in the admission of evidence pertaining to the ostensible value of the rebuilt cores. I agree.

Defendant correctly points out that the storekeeper witness disclaimed knowledge of whether there is within the Council Bluffs community a normal market value for rebuilt diesel radiator cores. In addition, the prosecution failed to offer any evidence that there was indeed no ascertainable normal market value for the rebuilt cores within that community at the time of the theft. Consequently, this court is confronted with the dilemma of whether evidence bearing only upon actual value was relevant when there had been no showing that a normal market value did not exist.

I believe that section 714.3 coupled with our own precedent concisely summarized in *State v. Boyken*, 217 N.W.2d 218, 220–21 (Iowa 1974), mandate that we adhere to the requirement that normal market value is the measure for determining the value of stolen property *unless the evidence discloses* that the property has no such market value. Supportive of this view, 52A C.J.S. *Larceny* § 118, at 619 (1968) comments: "[I]t is well settled that evidence of any other valuation but the market value of stolen property has been held inadmissible unless it is first shown that there is no market value."

Here, trial court, in admitting the storekeeper's testimony with respect to value, apparently acted under the impression that there was no market value for rebuilt radiator cores, as that court relied on *State v. Strum*, 184 Iowa 1165, 169 N.W. 373 (1918). In *Strum*, however, contrary to this case, direct testimony was given that there was no market value for the items stolen. Accordingly, in *Strum*, evidence of original cost was admissible for the jury's consideration in determining the value of the subject property when stolen. *Id.* at 1167–70, 169 N.W. at 374–75.

Turning now to several specific elements of this court's opinion, I first note a quotation from the record relied upon to establish that there was evidence of fair market value. What troubles me about the quoted segment is that the question as originally propounded by the prosecutor was changed when it was purportedly restated. This can be seen on examination of the full sequence of questions, objection and answers.

MR. CARR: Okay. Do you, now, have an opinion as to the *value* of a rebuilt radiator core, such as the seven in question in this case?

MR. LAUBENTHAL: Yes or no, Your Honor, please.

MR. CARR: Do you have an opinion; yes or no?

THE WITNESS: Yes. Just a personal opinion.

MR. CARR: What is your opinion?

MR. LAUBENTHAL: Object, Your Honor. There has not been any proper and sufficient foundation laid as regards to the witness to give testimony as regards to the alleged fair and reasonable market value of the seven used radiator cores. There has been no foundation laid if he's acquainted with the market place as regards to them. As a matter of fact, he indicates he is not so acquainted, and that his particular firm has not gone into the market to buy and sell such matters, and he has not either; and that would be the test of fair and reasonable market of value.

THE COURT: Overruled.

MR. CARR: You may answer. You stated you have an opinion. My question, now, is what is your opinion of the *fair market value* of a rebuilt radiator core?

THE WITNESS: Yes. Even though the rebuilt radiator core is somewhat— the life of it is somewhat less than a new one, I would say it would run approximately $25 less than what a new one would. [Emphasis added.]

Clearly, the witness's value testimony was premised upon solely his personal opinion and not upon any perceptions about its market value.

Next, the court claims that even if it assumes that the witness did not testify as to market value, his testimony was nonetheless sufficient to establish value because the need for market value testimony was obviated by two factors: the witness's position as owner of the property and the uniqueness of the property.

As to the first factor, I agree that the general rule is that an owner may be permitted to testify concerning the value of his stolen property without a prior showing of his knowledge of market value. However, as the court points out, this rule is based on a presumption that the owner knows what his property is worth. Under Iowa law and the law of other jurisdictions, the presumption of owner competency is rebuttable, not conclusive. Thus, if the owner admits having no knowledge of market value, where that is the exclusive standard, the presumption should fail. *See, e. g., State v. Ireton*, 193 Kan. 206, 212–13, 392 P.2d 883, 887–88 (1964) (Fontron, J., dissenting); *Cofflin v. State*, 230 Md. 139, 142–44, 186 A.2d 216, 218–19 (1962); Annot., 37 A.L.R.2d 967, 985–87 (1954); 32 C.J.S. *Evidence* § 546(116), at 434 (1964). In *Ryan v. Cooper*, 201 Iowa 220, 224, 205 N.W. 302, 303 (1925), this court stated that the general rule of owner competency "only accepts the proof of ownership as prima-facie proof of qualification, in the absence of negative circumstances." Because the owner witness in *Ryan* knew only what he had paid for the item in question and cross-examination revealed that he had never otherwise investigated its value, the trial court's ruling, dismissing the counterclaim for want of proof of value, was upheld. *Accord, Anderson Savings Bank v. Hopkins*, 195 Iowa 655, 657–58, 192 N.W. 824, 826 (1923) (upholding trial court's granting motion to strike value testimony of witness who was owner of property but lacked knowledge of its market value). Even assuming that the storekeeper witness did qualify as an owner, as the court finds, I would hold that the presumption of his competency to testify regarding value was rebutted by his admissions of ignorance of market value. By holding otherwise, the court has, in effect, established an invalid conclusive presumption of owner competency.

As to the second factor, I again agree with the general rule that evidence of actual value is sufficient to prove value if there is no regularly established market. I reject the assertion, however, that this court may judicially notice for the first time on appeal that an item has no regularly established market. By taking this view, the court is taking judicial notice of a fact assumed by the trial judge but not made a part of the record. This contravenes the law of this state. *See, e. g., In re Brown*, 183 N.W.2d 731, 733 (Iowa 1971). *See also* Iowa R.Civ.P. 136(d) (facts of which court is to be asked to take judicial notice to be considered at pretrial conference).

Moreover, I do not believe that the absence of a market for rebuilt radiator cores

is a matter of common knowledge or capable of certain verification such that it is susceptible of judicial notice. *See, e. g., Motor Club of Iowa v. Department of Transportation*, 251 N.W.2d 510, 517 (Iowa 1977); *In re Marriage of Beeh*, 214 N.W.2d 170, 174 (Iowa 1974).

The cases which the court cites as authority for the principle that an appellate court may apply judicial notice to resolve valuation issues involve mainly valuations of household goods. The valuation of household goods in this and other jurisdictions has been subject to less strict proof requirements. The reason for this is two-fold. First, items such as household goods and wearing apparel have market values which are thought to be commonly known. *See, e. g., Tubbs v. Garrison*, 68 Iowa 44, 48, 25 N.W. 921, 923 (1885). Secondly, evidence of the secondhand market value of particular household items is often difficult to procure. *See, e. g., Jeffries v. Snyder*, 110 Iowa 359, 362, 81 N.W. 678, 679 (1900).

While these reasons may provide some justification for taking judicial notice of the absence of market value of household goods, they do not defend the judicial notice taken here. Simply stated, we have no way of knowing whether or not a market for rebuilt diesel radiator cores exists.

What we are faced with here is the prosecutor's failure to lay foundation for the admission of value evidence other than market value. I am not willing to avoid that failure by the employment of rationale that ignore the mandate of section 714.3 and the teachings of our own cases.

REYNOLDSON, C. J., and LeGRAND, J., join in this dissent.