STATE of Iowa, Appellee,

v.

Richard W. HOUSTON, Appellant.

No. 86–779.

Supreme Court of Iowa.

April 19, 1989.

Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen. and Stephen Petersen, County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Defendant, Richard W. Houston, appeals from two jury trials which resulted in his convictions of first-degree theft in violation of Iowa Code sections 714.1(4) and 714.2(1), second-degree burglary in violation of Iowa Code sections 713.1 and 713.5, and possession of burglar's tools in violation of Iowa Code section 713.7. In this consolidated appeal, defendant contests certain evidentiary rulings of the district court in both trials. Defendant also asserts the court erred by not severing the burglary and possession offenses which were tried in a single proceeding. The appeal was transferred to the court of appeals which reversed defendant's theft conviction. We granted the State's application for further review. We now vacate the decision of the court of appeals and affirm the judgments of the district court.

I. *Background facts and proceedings.* On August 3, 1985, a flat-bed trailer was stolen from the location where it was stored in Davenport.

On August 6, two garden tractors and other lawn and garden equipment were reported stolen from a cemetery in Durant. It was determined that access to the equipment was gained by cutting a passage through a fence that separated the cemetery from an adjacent pasture. The storage shed which housed the machinery was broken into and the equipment was removed and loaded onto a vehicle waiting in the pasture. Four distinct tire tracks were discovered which led from the pasture to a nearby roadway.

Shortly thereafter, law enforcement authorities were notified by a citizen informant, Carrell Hester, that defendant had offered to sell him tractors which were stolen from the Durant cemetery. In cooperation with the law enforcement authorities, Hester contacted defendant and arranged for a proposed sale of the tractors to two undercover officers of the Department of Criminal Investigation.

On the date of the proposed sale, defendant and two companions arrived at the designated site in defendant's pickup truck towing the flat-bed trailer reported stolen in Davenport. Loaded upon the trailer were the two stolen tractors. Defendant arranged to sell to the undercover agents the two garden tractors and the trailer for $2,000. Defendant and his two companions were then arrested.

A search of defendant's truck was subsequently conducted pursuant to a warrant which resulted in the seizure of a number

of tools, including a chisel, a large and small maul, two pry bars, three screwdrivers, a flashlight and two pairs of wire cutters. A county plat book was also seized in which someone had circled the locations of cemeteries and a sheet of paper indexing the pages of the plat book where cemetery locations were circled. The location of the Durant cemetery was circled and crossed out.

It was later determined that three of the tire treads on defendant's truck matched three of the tracks discovered near the Durant cemetery. The fourth track matched one of the tires from the trailer seized with defendant's truck. Laboratory analysis confirmed that one of the pairs of wire cutters seized from defendant's truck was used to cut the fence at the Durant cemetery.

An amended trial information was filed against defendant and his two companions charging each with second-degree burglary for the August 6 break-in and theft from the Durant cemetery, possession of burglar's tool on August 9, and first-degree theft by possessing on August 9 stolen property with a value in excess of $5,000. In addition, the amended information alleged defendant was an habitual criminal. *See* Iowa Code § 902.8 (1985).

Two jury trials were held. In the first trial, all three co-defendants were tried together on the theft offense. At trial, defendant objected to the State's evidence relative to the value of the stolen tractors. Defendant also objected to the intervention by the trial court during the cross-examination of Carrell Hester, a key witness for the State. Following trial, a jury verdict was rendered, finding defendant guilty of first-degree theft. Judgment and sentence were entered, thereafter.

In the second trial, the State proceeded against defendant alone. Over defendant's later objection, both the possession and burglary charges were tried together. Defendant also objected to the admission of certain physical evidence based on an alleged insufficient showing of the chain of custody of the evidence after it was seized.

Judgment and sentence were entered upon the jury verdict of guilty on these charges.

Defendant's appeal on these issues resulted in reversal of the theft conviction by the court of appeals. We granted the State's application for further review.

II. *The theft trial.* The first trial concerned the State's charges of theft against defendant and the other two men under Iowa Code sections 714.1(4) and 714.2(1). In his appeal from this proceeding, defendant contends (1) that the State failed to produce sufficient evidence as to the value of the stolen equipment, and (2) that the trial court erroneously interrupted and restricted his cross-examination of a key witness for the State.

■ A. *Evidence as to the value of the stolen equipment.* To constitute first-degree theft, the property involved must be valued at more than $5,000. Iowa Code § 714.2(1) (1985).

At trial, Arnold Alpen, a member of the board of trustees of the Durant cemetery, testified that the storage shed at the cemetery had been broken into around August 6, 1985. Alpen testified that he often inspected the equipment at the cemetery and was familiar with the contents of the storage shed. Alpen identified the equipment that was missing from the shed and identified the tractors seized from defendant as the ones which were stolen from the cemetery. Over defendant's objection, Alpen also testified that he and the board of trustees had put a combined value of $4600 on the tractors for insurance purposes.

The State also produced testimony that the value of the stolen trailer exceeded $900. Defendant does not contest this evidence.

On appeal, defendant contends that Alpen's testimony concerning the value of the stolen tractors was improper opinion testimony and otherwise lacked proper foundation. Alternatively, defendant contends that the evidence was insufficient to establish beyond a reasonable doubt that the value of the stolen property exceeded five thousand dollars.

With regard to the value of stolen property, Iowa Code section 714.3 (1985) in part provided that "[t]he value of property is its highest value by any reasonable standard at the time that it is stolen." This court has observed that testimony as to value is liberally received with its weight to be determined by a jury, and that rules as to competency of witnesses on questions of value are also liberally construed. *State v. Savage*, 288 N.W.2d 502, 504 (Iowa 1980); *see* Iowa R.Evid. 701.

Generally, an owner is deemed competent as a matter of law to testify as to the value of property he owns. This rule, however, is not applicable to an officer of a corporation unless some showing is made that the officer is familiar with the property in question. *Savage*, 288 N.W.2d at 505; *see also* McCormick, *Opinion Evidence in Iowa*, 19 Drake L.Rev. 245, 255 (1970).

Rather than being a true owner, Alpen's relationship to the Durant cemetery and its property more closely resembles that of an officer and a corporation. Even in this regard, it is evident that Alpen was personally familiar with the tractors that were stolen from the cemetery storage shed. Furthermore, as a cemetery trustee, Alpen was familiar with and testified concerning the valuation of the tractors for insurance purposes. Defendant's objections to this evidence affect its weight rather than admissibility. We hold that Alpen's testimony sufficiently complied with section 714.3 and was admissible pursuant to rule 701.

Correspondingly, defendant's objections and post-trial motions, based upon the alleged insufficiency of the value evidence, were correctly overruled.

B. *Cross-examination of the State's witness.* During the theft trial, defendant's cross-examination of Carrell Hester, a key witness for the State, was interrupted by the trial court judge. Defendant now contends that this interruption violated his sixth amendment rights under the United States Constitution and otherwise deprived him of a fair trial.

During his direct examination by the State, Hester related his employment history, including his employment for a time at JI Case Company, approximately ten years before the date of the trial. When asked why he left Case, Hester responded that he left for personal reasons.

The following day, counsel for defendant cross-examined Hester concerning this matter, resulting in the following colloquy:

Q. Mr. Hester, would you deny that you were given the opportunity to either resign or quit, or be fired, because you were carrying on a course of conduct of theft from your fellow employees at Case? You deny that?

A. I did not ever steal anything from my fellow employees at Case.

Q. How about stealing from Case?

A. If I would have stolen from Case, they would have prosecuted.

Q. So you deny that that's the case?

A. I am telling you that the Case policy was if an employee would have stolen from them, they would have arrested him and charged and convicted or tried to convict.

Q. So I am incorrect in saying that that's the reason you left?

A. I told you I left for personal reasons.

Q. I want to know if I am incorrect; would you answer my question please? Yes or no, am I incorrect that that's why you left?

A. I believe that it's not immaterial (sic) to this case.

THE COURT: If the witness is asking the assistance of the Court, I agree, I think—would counsel approach the bench?

(At which time, a short discussion was had out of the hearing of the reporter.)

THE COURT: This is not relevant to the case, and it is not proper cross-examination, and I'll assist the witness, who has asked for the protection of the Court, by telling him he does not need to answer the questions concerning the reasons for his leaving JI Case.

Defendant subsequently made an offer of proof by examining Hester outside the presence of the jury. At this time, Hester testified that he resigned from Case rather than name someone suspected in a theft at

the plant. Hester denied that he was responsible for the theft.

■ 1. *Intervention by the trial court.* Preliminarily, we must determine whether the intervention by the trial court, on its own motion, was proper under the circumstances.

"The presiding judge is not restricted to the functions of a mere umpire or a referee in a contest between opposing parties or counsel. A trial court has the duty to control and conduct its court in an orderly, dignified and proper manner." *Schroedl v. McTague*, 169 N.W.2d 860, 867 (Iowa 1969). We have also observed:

> In fulfilling its role, occasions will arise when a trial judge is constrained to intervene on its own volition to protect a witness from abusive treatment or unnecessary humiliation, to stay the pursuit of a patently irrelevant line of inquiry—particularly when it may obfuscate the issues and mislead the jury, to act to avert unnecessary repetition, to require that the proceedings move forward without undue delay and to take reasonable measures to insure that the evidence is intelligibly presented to the jury.

*State v. Cuevas*, 288 N.W.2d 525, 531 (Iowa 1980).

In *Cuevas*, the trial court intervened during the defendant's cross-examination of the State's expert witness. The intervention followed a series of repetitious questions to which the witness repeatedly responded that he was unable to answer. On review we noted that the transcript reflected that the exchange between the witness and questioner was intense and that the trial court acted within its discretionary authority when it intervened. *Id.* at 531–32.

In the present case, as in *Cuevas*, some intensity can be discerned from the record. The dialogue from the record further implies that the witness sought instruction or protection from the trial court judge. Based upon this record, we conclude the trial court did not exceed its authority by intervening during the cross-examination.

■ 2. *The restriction of defendant's impeachment of the State's witness.* Giv-en our conclusion above, that the court acted within its discretionary authority when it intervened during defendant's cross-examination of Hester, we must next determine whether the court's ruling restricting defendant's examination was proper.

A defendant's right to cross-examine a witness is secured by the confrontation clause of the sixth amendment, *State v. Durrell*, 300 N.W.2d 134, 137 (Iowa 1981), and made applicable to the states under the fourteenth amendment to the United States Constitution. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965). We have recognized, however, "that the Constitution 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to what ever extent, the defense might wish.'" *In re J.D.S.*, 436 N.W.2d 342, 348 (Iowa 1989) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986)).

A defendant is given "reasonable latitude" in cross-examining a State's witness. *State v. Martin*, 385 N.W.2d 549, 552 (Iowa 1986). The trial court, however, still exercises its sound discretion in determining the scope of cross-examination. *Id.* citing *Durrell*, 300 N.W.2d at 134. A witness's credibility is placed in issue when that witness testifies. *State v. O'Connell*, 275 N.W.2d 197, 203 (Iowa 1979). Therefore, a defendant may question the credibility of a State's witness by attempting to impeach the witness by proper cross-examination. *State v. Droste*, 232 N.W.2d 483, 489 (Iowa 1975).

Proper cross-examination may include impeachment by inquiry into specific instances of conduct. Iowa Rule of Evidence 608(b) allows such inquiries, in the discretion of the court, if probative of the witness's truthfulness or untruthfulness. *See Martin*, 385 N.W.2d at 552. We disturb a trial court's rulings bearing on these questions only when the broad discretion accorded the court has been obviously abused. *Id.* citing *State v. Clark*, 325 N.W.2d 381, 383 (Iowa 1982).

The witness, Hester, left the employ of JI Case approximately ten years before trial in the present action. This span of time alone substantially erodes the probative value of cross-examination concerning these events. *Cf.* Iowa R.Evid. 609(b) (limiting the admission of evidence of a witness's prior conviction which occurred more than ten years before the time of trial). Hester was neither charged nor convicted of any unlawful conduct that resulted in discharge. Furthermore, as defendant's offer of proof bore out, Hester denied that he was involved in the theft at the plant.

Under the facts of this case, defendant's proposed inquiry into the termination of Hester's employment at JI Case had minimal probative value. Defense counsel's accusations, on the other hand, obviously imported a substantial prejudice against the witness. We conclude, therefore, that the trial court did not abuse its discretion in limiting this line of cross-examination.

III. *The burglary and possession trial.* The second trial concerned defendant only and involved the two offenses of second-degree burglary (Iowa Code sections 713.1 and 713.5) and possession of burglar's tools (Iowa Code section 713.7). In his appeal from this proceeding, defendant contends (1) that the trial court erroneously overruled his motion to sever and try separately the individual charges, and (2) that the trial court erroneously admitted into evidence certain objects without a proper showing of the chain of custody of those items.

■ A. *Joinder of charges.* Initially, defendant contests the trial court's ruling denying his motion to sever the burglary and possession charges. He contends that joinder of the counts in a single proceeding violated his constitutional and statutory rights to a fair trial.

Iowa Rule of Criminal Procedure 6(1) permits the joinder of offenses in a single complaint, information or indictment when the offenses charged are based on (1) the same transaction or occurrence, or (2) a common scheme or plan. *State v. Lam,* 391 N.W.2d 245, 249 (Iowa 1986).

In *Lam,* we construed for the first time the "common scheme or plan" language of the rule. We noted that this language was part of an amendment to our former rule which served to liberalize and broaden charging practices in Iowa. In that case we adopted the approach utilized by the Missouri courts when determining whether separate acts are to be considered part of a common scheme. *Id.* at 250. Under this test, all the offenses charged must be products of a single or continuing motive. *Id.* (citing *State v. Garrette,* 699 S.W.2d 468, 493 (Mo.Ct.App.1985)). Applying this test in *Lam,* we held that two burglary charges were properly tried together where both offenses were alleged to have occurred within a period of several hours on the same day in the same general location and using the same method of operation. These facts were found to establish that "both offenses were products of a single and continuing motive for obtaining small portable objects from apartments for money." *Lam,* 391 N.W.2d at 250.

The allegations in the present action asserted that the burglary and possession of burglar's tools offenses were also products of a single or continuing motive. One pair of wire cutters retrieved from defendant's truck were linked to the Durant burglary. Furthermore, markings in the plat book found in defendant's truck clearly indicated that a series of thefts were planned in a number of the cemeteries in rural Muscatine county which included the Durant cemetery.

Based upon these facts, the trial court correctly denied defendant's motions to sever and proceeded to try both counts together.

■ B. *Chain of custody.* Defendant lastly asserts the trial court erred in overruling his chain-of-custody objections to admission into evidence of a pair of wire cutters and a length of the Durant cemetery fence.

Admission of evidence over a chain-of-custody objection is a matter within the trial court's discretion, and reversal is warranted only when a clear showing is made that the discretion was abused. *State v.*

*Gibb*, 303 N.W.2d 673, 681 (Iowa 1981). When the trial court has determined that the identity of the exhibit has been sufficiently determined, any contrary indication or speculation affects the weight of the evidence, not its admissibility. *Id.*

We have consistently held that where the exhibits consist of solid objects which are not easily susceptible to undetected alteration, the exhibits may be admitted into evidence despite a break in the chain of custody. *State v. Limerick*, 169 N.W.2d 538, 541 (Iowa 1969). "Where the possibility of alteration of an exhibit is slight, the materiality of the alteration remote, and the exhibit has otherwise been properly identified we have dispensed with a showing of continuous custody." *Id.* (concerning admission of a gun); *see also State v. Ford*, 259 Iowa 744, 749, 145 N.W.2d 638, 640–41 (1966) (admitting a gun and hammer over chain-of-custody objection).

The seized wire cutters and the portion of the cemetery fence which the State offered into evidence at trial were clearly of the variety of "hard" evidence which requires no detailed showing of its chain of custody. Defendant's objections in this regard were properly overruled.

Other issues presented by defendant in this appeal have been examined and found to be without merit.

IV. *Disposition.* We conclude the trial court correctly overruled defendant's objections relative to valuation of the stolen property and the cross-examination of Carrell Hester in defendant's theft trial. Defendant's objections to the joinder of the burglary and possession offenses and his evidentiary objections were also correctly overruled in the second trial. Therefore, we vacate the decision of the court of appeals, and affirm the judgments of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENTS AFFIRMED.