# IN THE COURT OF APPEALS OF IOWA

No. 14-1556
Filed January 27, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARK WAYNE GEAR,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lee (North) County, Mary Ann Brown, Judge.

Mark Gear appeals his conviction for assault on correctional staff causing bodily injury. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Linda J. Hines, Assistant Attorneys General, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

Mark Gear appeals his conviction for assault on correctional staff causing bodily injury claiming the district court erred by prohibiting testimony concerning a doctor's past ethics complaints and his trial counsel was ineffective. We affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS

Gear is an inmate at the Iowa State Penitentiary and was assigned to the Multiple Care Unit due to his Huntington's disease.[1] Tasha Whalen is a registered nurse who works at the penitentiary. On the morning of May 24, 2013, Whalen was administering medications to patients in the unit when Gear refused to take all but one of his medications. He requested a list of his medications from Whalen so that he could be more active in his treatment, and became upset when she declined to give him the list. Whalen testified Gear had been "very frustrated that week" and had refused to eat his breakfast that morning. In an attempt to "de-escalate the situation" Whalen sat across the table from Gear and discussed (for approximately ten minutes) the reasoning behind not allowing Gear to have the list. During the conversation, Gear demanded to see the doctor and his voice "started getting louder and he started getting a penetrating stare at [Whalen], so [she] really started feeling a little threatened." Whalen rose from the table and asked Gear to go back to his cell. Gear did not comply with the

---

[1] Huntington's disease results from genetically programmed degeneration of brain cells, called neurons, in certain areas of the brain. This degeneration causes uncontrolled movements, loss of intellectual faculties, and emotional disturbance. . . . As the disease progresses, concentration on intellectual tasks becomes increasingly difficult and the patient may have difficulty feeding himself or herself and swallowing.
*NINDS Huntington's Disease Information Page*, National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/huntington/huntington.htm (last visited Dec. 31, 2015).

request. Whalen then asked correctional officer Rudy Perez to escort Gear to his cell until the unit manager could speak with Gear. Gear complied with Perez's request and returned to his cell.

Whalen continued administering medications to the other inmates in the unit and, though Gear cursed at her, she assumed the confrontation was finished. Gear argued with Perez as Whalen gave medications to another inmate. At Gear's request, Perez retrieved Gear's unfinished breakfast. During this time, Perez merely closed Gear's cell door and did not lock it as he had no key. When Perez returned to Gear's cell with his breakfast, Gear knocked the food out of Perez's hand and ran down the hallway toward Whalen, who had just exited a cell about ten feet from Gear's. Whalen testified Gear stated: "You bitch, don't you know what I'm doing time for? I've killed two cops, or tried to kill two cops, or something to that effect." Gear grabbed Whalen by the neck with one hand and punched her in the face repeatedly with his other hand. Perez testified he heard Gear call Whalen "a fucking bitch" as he ran toward her. Perez wrestled Gear off Whalen and activated the alarm.

Whalen was treated at a local hospital where she was diagnosed with multiple contusions, a large hematoma on her face, and lacerations. Ultimately, Whalen suffered a black eye that caused her eye to swell shut and bruising to her hand. She missed three days of work due the incident.

Randy Van Wye, an investigator at the penitentiary, interviewed Whalen about six days after the incident to obtain "all the facts before [he] talked with Mr. Gear." Van Wye interviewed Gear two weeks after the incident. After advising

Gear of his *Miranda* rights, Van Wye asked for Gear's version of the events. Gear stated he knew Whalen was a nurse and he intended to hurt her; he knew what he did was wrong.

On January 12, 2013, the State charged Gear with assault on correctional staff causing bodily injury, in violation of Iowa Code sections 708.1(1) and 708.3A(3) (2013). Gear pleaded not guilty and waived speedy trial. Gear filed a notice of defenses on January 14, stating he would rely on the affirmative defenses of diminished responsibility and/or intoxication. To substantiate these defenses, Gear retained two expert witnesses to evaluate him and provide testimony at trial. A jury trial began on August 18, and the jury returned a guilty verdict. On September 12, Gear was sentenced to serve an indeterminate term of imprisonment not to exceed two years to be served consecutively with Gear's current sentence. Gear now appeals.

## II.     STANDARD OF REVIEW

We review the court's evidentiary rulings for an abuse of discretion. *State v. Putman*, 848 N.W.2d 1, 8 (Iowa 2014). A district court abuses its discretion when its decision rests on grounds or on reasons clearly untenable or to an extent clearly unreasonable. *Id.* There will be no abuse of discretion found unless a party has suffered prejudice. *Id.* The district court is given broad discretion in evidentiary matters, and we will disturb its rulings only upon a showing of abuse. *Id.*

We review ineffective-assistance-of-counsel claims de novo. *State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015). We look to see whether under the

entire record and the totality of the circumstances counsel's performance was within the range of normal competency. *Id.* The inquiry is transformed into an individualized fact-based analysis. *Id.*

## III. MERITS

### A. Exclusion of Ethical Complaints

Gear claims the district court erred by prohibiting him from cross-examining the State's medical witness about past ethical complaints.

A defendant is given "reasonable latitude" in cross-examining a State's witness. *State v. Houston*, 439 N.W.2d 173, 177 (Iowa 1989). The trial court, however, still exercises its sound discretion in determining the scope of cross-examination. *Id.* "A witness's credibility is placed in issue when that witness testifies." *Id.* Therefore, a defendant may question the credibility of a State's witness by attempting to impeach the witness by proper cross-examination. *State v. Droste*, 232 N.W.2d 483, 489 (Iowa 1975); *see* Iowa Rs. Evid. 5.607, 5.608. Cross-examination may include impeachment by inquiry into specific instances of conduct. Iowa Rule of Evidence 5.608(b) allows such inquiries, in the discretion of the court, if probative of the witness's truthfulness or untruthfulness. *See Houston*, 439 N.W.2d at 177.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Evid. 5.403. We employ a two-part test to decide whether evidence should be excluded under rule

5.403. *See State v. Huston*, 825 N.W.2d 531, 537 (Iowa 2013). First, we "consider the probative value of the evidence." *Id.* Second, we balance the probative value "against the danger of its prejudicial or wrongful effect upon the triers of fact." *Id.*

Dr. Stephen Sparks (the medical physician at the penitentiary and Gear's treating physician) testified on behalf of the State. During Gear's cross-examination of Sparks, Gear's attorney asked, have "[y]ou ever had any ethical complaints filed against you with the Board of Medicine?" The State then asked to approach the bench, and a discussion was conducted off the record. The court excused the jury, and the State voir dired Sparks for the purpose of interposing an objection. During voir dire, Sparks stated he had been disciplined by the Iowa Medical Board in 1985, 2001, and 2009. In 1985 and 2001, Sparks was disciplined for substance abuse issues receiving five years' probation for each. In 2009, Sparks was placed on two years of probation for creating a "hostile work environment and abuse [of] patients." He stated he had an affair with a nurse and there were allegations he made inappropriate comments to staff and patients. Sparks completed his probation before trial, but was on probation, for a short period of time, when he treated Gear. Sparks testified the allegations made against him did not involve fraud or dishonesty.

Gear explained he wanted to cross-examine Sparks to establish:

That during the time of Doctor Sparks's practice, he had been cited several times for excessive use of drugs and alcohol, engaging in a pattern of unethical and unprofessional conduct, including making inappropriate sexual comments to female co-workers and patients on numerous occasions and did engage with sexual relations with one or more female patients.

Gear believed the questioning would be "relevant to the jury . . . if [Sparks]'s engaging in certain conduct that is ethically questionable, given his purpose of caretaking for others, that he should be held to that higher standard. . . . [I]t's relevant to how he's treating his patients, if he's also engaging in these other behaviors while treating patients."

The court sustained the State's objection. The court reasoned:

> In this case it would seem to me that in order for the probation or complaints made against Doctor Sparks that led to his probation to be relevant in this case, first of all, his probationary period needed to cover the time that he was treating Mr. Gear. Secondly, the topic of his probation must somehow relate to the opinions that he's offering.
> And I think that someone who is alleged to have had substance abuse problems, that certainly could be relevant because it affects their credibility, it affects their recollection, it affects how they view everything; but the evidence here is that the matters for which Doctor Sparks was on probation related more to moral character than to his ability to provide medical care or at least the particular type of medical care that he was giving Mr. Gear during the period of time he was on probation.

On appeal, Gear claims the evidence regarding Sparks's discipline was relevant and admissible because the circumstance of his probation may have impacted Sparks's bias as a witness. Gear notes this is an issue of first impression in Iowa (we agree) so he relies upon cases from outside of Iowa to support his argument.[2] For example, in *Cetera v. DiFilippo*, the district court allowed defense counsel to cross-examine an expert medical witness (a

---

[2] *See Richmond v. Longo*, 604 A.2d 374, 376–79 (Conn. App. Ct. 1992) (holding that a party should have been allowed to cross-examine a physician expert with evidence that his license had been terminated due to his "mishandling" of cases); *Creighton v. Thompson*, 639 N.E.2d 234, 239–40 (Ill. App. Ct. 1994) (allowing cross-examination of an expert witness doctor about restrictions on his medical license (stemming from inappropriate patient care) since the doctor had offered testimony regarding another doctor's failure to exercise an appropriate standard of medical care).

physician specializing in internal medicine and infectious diseases) concerning a reprimand on his medical license. 934 N.E.2d 506, 517 (Ill. App. Ct. 2010). The reprimand was for the physician's "failure to recognize the presence of microhematuria in a patient." *Id.* at 520. The plaintiff retained the physician to opine about another physician's negligent diagnosis. *Id.* at 513. In affirming the district court, the Illinois Court of Appeals reasoned the reprimand was relevant because it reflected on his "qualifications and had some tendency to lessen his credibility as an expert." *Id.* at 520.

Here, Gear claims the ethical complaints had probative value because the complaints affected the credibility of his testimony. We disagree. Unlike the physician witness in *Cetera*, Sparks's ethical complaints do not relate to his ability to treat or diagnose his patients. Since the ethical complaints dealt with a decades old substance abuse issue (that did not occur while he was providing care to Gear) and Sparks's inappropriate behavior at work—and not his ability to care for his patients—the evidence was properly excluded by the district court. The evidence of the ethical complaints would also have been more prejudicial than probative if submitted to the jury. *See Huston*, 825 N.W.2d at 537. The district court did not abuse its discretion.

### B. Ineffective-Assistance-of-Counsel

Gear claims his trial counsel was ineffective for failing to properly raise the issue of whether there was sufficient evidence to prove he had the specific intent to assault Whalen, and for failing to file a motion for new trial on the basis the verdict was contrary to the weight of the evidence.

"If an ineffective-assistance-of-counsel claim is raised on direct appeal from the criminal proceedings, we may decide the record is adequate to decide the claim or may choose to preserve the claim for postconviction proceedings." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Upon our review of the record, we find it adequate to address Gear's ineffective-assistance-of-counsel claim. *See id.* An ineffective-assistance-of-counsel claim requires a demonstration of both ineffective assistance and prejudice. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The ineffective-assistance prong requires proof the attorney performed below the standard demonstrated by a reasonably competent attorney as compared against prevailing professional norms. *Id.* The prejudice prong requires proof that, but for the ineffective assistance, "the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The applicant must "show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* (citing *Strickland*, 466 U.S. at 693). Walls must prove both the "essential duty" and "prejudice" elements by a preponderance of the evidence. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012).

Gear's trial counsel moved for judgment of acquittal at the close of the State's case and once more at the close of all the evidence. Gear's counsel made a general motion that did not address whether the State had proved the specific intent element of assault on correctional staff causing bodily injury. Therefore, Gear claims his counsel was ineffective. Upon our review of the record, we are convinced a judgment of acquittal referencing the State's burden

to prove Gear's specific intent would not have been successful. Gear was not prejudiced by his trial counsel's failure to reference the specific intent element of the charged offense.

The jury was instructed the offense of assault on correctional staff causing bodily injury[3] requires the State to show:

> 1. On or about May 24, 2013, the defendant committed an assault upon Tasha Whalen.
> 2. At the time of the assault, Tasha Whalen was a health care provider employed by the Iowa Department of Corrections and the defendant knew Ms. Whalen was so employed.
> 3. The defendant had the apparent ability to do the act.
> 4. The defendant's act caused a bodily injury to Tasha Whalen. If the State has proved all of the elements, the defendant is guilty of Assault on Correctional Staff Causing Bodily Injury. If the State has failed to prove any one of the elements, the defendant is not guilty of Assault on Correctional Staff Causing Bodily Injury . . . .

Gear claims the State failed to show on the day of the incident Gear had the capacity to form the specific intent required, as he was suffering from Huntington's disease, which negated the required specific intent.

The jury received the following instruction[4] on diminished responsibility:

> One of the elements the State must prove is that the defendant acted with specific intent. The lack of mental capacity to form a specific intent is known as "diminished responsibility."
> Evidence of "diminished responsibility" is permitted only as it bears on his capacity to form specific intent.
> "Diminished responsibility" does not mean the defendant was insane. A person may be sane and still not have the mental capacity to form an intent because of a mental disease or disorder.
> The defendant does not have to prove "diminished responsibility;" rather, the burden is on the State to prove the defendant was able to, and did, form the specific intent required.

---

[3] *See* Iowa Code §§ 708.1(1), 708.3A(3).

[4] *See also Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008) (defining diminished responsibility).

Dr. John Fell and Dr. Veronica Lestina served as Gear's expert witnesses, and both testified Gear did not have the capacity to form the requisite specific intent at the time of the assault. Fell testified Gear's Huntington's disease caused him to have cognitive impairments and mental deficiencies that made him unable to control his actions. Lestina agreed with Fell and noted Gear was acting instinctually at the time of the assault, and due to his borderline intellectual functioning, complicated by the Huntington's disease, Gear did not have control over his actions.

The State presented the testimony of nurse Whalen and Dr. Sparks. Both noted they had at least daily interactions with Gear. Whalen testified Gear exhibited a few symptoms associated with Huntington's disease, including muscle incoordination, chewing and swallowing difficulties, and certain behavioral symptoms. She also observed Gear was physically and mentally able to express a desire to take a role in the treatment of his disease including requesting a list of his medications. Sparks testified Gear was able to take care of his basic needs like bathing, clothing, and eating. Gear would socialize and perform work in the unit. Sparks opined even though Gear experienced mood swings he appeared to be in control of his mental faculties.

The State also presented the testimony of Randy Van Wye. Van Wye recounted his interview of Gear. In the interview, Gear admitted to hitting Whalen and knowing it was wrong. Gear also stated he hit Whalen out of anger due to his disagreement with her concerning his medication.

Upon our review, we find the evidence was sufficient for the jury to find Gear had the specific intent required by Iowa Code sections 708.1(1) and 708.3A(3). Gear has failed to show he was prejudiced by the omission of a reference to specific intent in his motion for judgment of acquittal because "the result of the proceeding would [not] have been different." *Ledezma*, 626 N.W.2d at 142 (citing *Strickland*, 466 U.S. at 694).

Similarly, Gear has not demonstrated he was prejudiced by his counsel's failure to file a motion for new trial because the jury verdict was not "contrary to the law or evidence." Iowa R. Crim. P. 2.24(2)(b)(6). A verdict that is contrary to evidence means it is "contrary to the weight of the evidence." *Nguyen v. State*, 707 N.W.2d 317, 327 (Iowa 2005). The "weight of the evidence" involves "a determination by the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other." *Id.* For the above reasoning, the "greater amount of credible evidence" supports the jury verdict. Gear was not prejudiced by his counsel's failure to file a motion for new trial because the district court would have denied the motion. We find Gear did not receive ineffective assistance of counsel and affirm Gear's conviction.

**AFFIRMED.**