# IN THE COURT OF APPEALS OF IOWA

No. 17-0812
Filed August 1, 2018

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DESMOND D. REEVES,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Jackson County, Thomas G. Reidel (trial) and Nancy S. Tabor (sentencing), Judges.

Defendant appeals his convictions for robbery in the first degree and assault with intent to inflict serious injury. **AFFIRMED.**

Matthew L. Noel of Noel Law Firm, Clinton, until withdrawal, then Mark C. Smith, Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Desmond D. Reeves, Anamosa, appellant pro se.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Bower and McDonald, JJ. Tabor, J., takes no part.

**BOWER, Judge.**

Desmond Reeves appeals his convictions for robbery in the first degree and assault with intent to inflict serious injury. We find substantial evidence supports the jury's verdict, including evidence of Reeves's intent to commit theft as an element of the offense of robbery. We conclude the district court did not abuse its discretion in concluding character evidence concerning a witness was not admissible because it was not relevant. We find Reeves's pro se claims were not preserved or not supported by argument in his brief. We affirm Reeves's convictions.

### I.    Background Facts & Proceedings

Brian Filloon lived in a nine by seven foot attachment to a trailer home in Maquoketa. Filloon's "self-adopted" family—Billy and Stacy Schick and their son, Dylan Schick—lived in the trailer. Filloon's room had a door to the outside and an opening into the trailer. Filloon owned a television and X-Box gaming system, and few other material possessions. He had two BB guns under his cot.

On January 9, 2017, Filloon's friend, Kyle Kunde, came over at about 7:30 p.m. They smoked marijuana and played video games on the X-Box. At about 9:15 p.m., Filloon took a Valium pill someone had given him. Billy, Stacy, and Dylan were all in the trailer home at the time, as well as Dylan's friend, Damon McFarlane.

Around 9:30 p.m., two men came into Filloon's room through the outside door. The first man, later identified as Charlie Potter, pointed a sawed-off shotgun at Filloon and Kunde and said, "Give me everything you have," and the second

man, Reeves, repeated it. Filloon stated he thought it was a joke until Potter struck him in the face with his fist. Kunde was hit in the head with the shotgun. Filloon jumped up, grabbed the shotgun, and started to push Potter and Reeves out of the room. Reeves fired several shots at Filloon with a .22 caliber semi-automatic pistol. Outside the trailer, Filloon, Potter, and Reeves fell against a porch railing, which broke, and they fell on the ground, wrestling. Filloon stated Reeves said, "Move your sh*t. I'm going to shoot him in his head." Filloon let go of Potter, who ran away, leaving the sawed-off shotgun. Filloon and Reeves continued to wrestle and ended up in a cornfield. Eventually, Filloon realized he was injured and let go of Reeves, who also ran away, leaving his gun behind. Neither Filloon nor Kunde knew Reeves or Potter.

Billy Schick and a neighbor, Tanna Estes, helped Filloon into the trailer. Estes called 911. Police officers quickly arrived at the scene. Filloon received medical assistance; he had been shot three times—in the torso, hip, and leg. Within a short time, an officer saw Reeves walking down a nearby street, where a Chevy Avalanche picked him up. The officer stopped the vehicle, which was driven by Andrew Combs. The Avalanche was registered to Potter.

Reeves had injuries and initially said he had been in a MMA fight. Later, Reeves said he and his brother, Cal, had wrestled in a cornfield. Reeves had a lighter, an empty baggie, and maybe one coin on him. Officers took Reeves's clothing. DNA testing showed Filloon's blood was on Reeves's t-shirt and sweatshirt. In addition, shell casings from the scene matched Reeves's .22 caliber

semi-automatic pistol. Officers searched Filloon's room and found an amount of marijuana consistent with personal use but no evidence of drug dealing.[1]

Reeves was charged with robbery in the first degree and attempt to commit murder. He gave notice he intended to present a defense of self-defense. A jury trial commenced on April 3, 2017. The State presented evidence as outlined above. Reeves presented the testimony of Estes, who heard the porch rail break and then looked outside from her home next door. She observed much of the fight once Filloon, Potter, and Reeves were outside. She stated it appeared Reeves was trying to get away but Filloon would not let him go.

Reeves testified he lived in Dubuque and came to Maquoketa on January 9, 2017, with Potter and Michael Collins so Collins could get a cell phone from Alex Wright. Reeves testified he, Potter, and Collins wanted to buy some marijuana before they drove back to Dubuque, so Wright contacted a friend, Dylan, to set up the purchase. He said Combs drove them to the location and Wright pointed out the door. Reeves stated he always carried a gun. He said the door opened when he and Potter knocked and they walked in to find Filloon and Kunde, each holding a gun. Reeves said Potter asked to see the marijuana. Kunde said, "You guys on some fishy sh*t," and pulled up his gun. Potter then pulled out his sawed-off shotgun. Filloon rushed them. Reeves said he tried to struggle away from Filloon and pulled out his gun, shooting Filloon. He stated he shot Filloon in self-defense.

---

[1] Filloon had a digital scale, which he stated he used to weigh marijuana he purchased to make sure he had not been cheated. There was no other evidence of drug dealing, such as larger quantities of marijuana, cash, or baggies.

The State presented rebuttal evidence from Combs, who had entered into a plea agreement with the State. Combs stated Wright called Collins on January 9, 2017, stating he planned to commit a robbery and Reeves, Potter, and Collins came to Maquoketa for this purpose. The proposed victim was McFarlane. Combs stated Collins drove the Avalanche and Reeves and Potter went into the trailer. He stated he and Collins then left, but Combs later returned and picked up Reeves. Combs stated there was no plan to buy drugs and Reeves gave Combs his cell phone and cash before he went into the trailer. Combs stated he had seen McFarlane at the trailer before but did not know if he was living there.

The jury found Reeves guilty of first-degree robbery, in violation of Iowa Code section 711.2 (2017), a class "B" felony, and assault with intent to inflict serious injury, in violation of section 708.2(1), an aggravated misdemeanor. Reeves was sentenced to terms of imprisonment not to exceed twenty-five years and two years, to be served concurrently. Reeves now appeals his convictions.

## II.     Sufficiency of the Evidence

One of the elements of robbery is the intent to commit a theft. *See* Iowa Code § 711.1(1). Reeves claims there was not sufficient evidence in the record to show he intended to commit a theft at the time he entered Filloon's room. He states he went into the room with the intent to purchase marijuana. He states it was unlikely he would intend to rob Filloon, who had few assets beyond his television and X-Box gaming system.

On claims concerning the sufficiency of the evidence, our review is for the correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

In reviewing a challenge to the sufficiency of evidence supporting a guilty verdict, we consider all of the evidence in the record "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Keopasaeuth,* 645 N.W.2d 637, 640 (Iowa 2002). A verdict will be upheld if there is substantial evidence in the record to support it. *Sanford,* 814 N.W.2d at 615. We will consider all the evidence presented, not just the evidence supporting the verdict. *State v. Jacobs*, 607 N.W.2d 679, 682 (Iowa 2000). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Sanford*, 814 N.W.2d at 615.

There is substantial evidence in the record to show Reeves and Potter intended to commit a theft. Filloon testified Potter said, "Give me everything you have," and Reeves repeated this. On cross-examination, Filloon stated after Potter said, "Give me everything you got," Filloon responded, "Like what? My TV and sh*t?" He stated Reeves then "repeated what Potter had just said." Kunde also testified Potter "asked us to give everything we had" and Reeves "asked if we thought they were playing." Reeves and Potter were armed with guns when they made these statements. Additionally, Combs testified Reeves and Potter entered Filloon's room with the intent to commit robbery.

"Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). The jury could find the testimony of Filloon, Kunde, and Combs more credible than Reeves's

testimony he and Potter entered Filloon's room with the intent to purchase marijuana. Filloon and Kunde denied selling drugs, and Combs testified there was no plan to buy drugs. Furthermore, the officers who searched Filloon's room testified there was no evidence of drug dealing, such as large quantities of marijuana, cash, or baggies. We conclude substantial evidence supports the jury's verdict.

### III.    Character Evidence

During cross-examination of Filloon by defense counsel, the following occurred:

> Q. Do you remember at that interview also telling the officers that you walked by foot from Kalamazoo, Michigan to Maquoketa, Iowa? A. Yes.
> Prosecutor: Object to the relevance.
> Defense Counsel: I think this needs to be heard outside the presence of the jury, the argument.

Reeves claimed the evidence was admissible under Iowa Rule of Evidence 5.608(b) as a specific instance of conduct which was probative of the witness's character for truthfulness or untruthfulness. The State argued the evidence had no probative value and was inadmissible because it was not relevant. The district court sustained the objection, stating:

> I don't think it's relevant. I think there has to be some connection between the alleged untruthfulness and the act here. I mean, we're not—we don't bring in that maybe Mr. Filloon would have maybe skipped school when he was in third grade and told his mom he didn't.
> At some point there has to be a better connection than what there is in this case about some statements such as this. I don't think they're relevant, so I'm going to sustain the objection.

Reeves claims the district court abused its discretion by sustaining the State's objection to the evidence. He states rule 5.608 does not require a connection between the proffered evidence and the offense charged. He states he was prejudiced by the court's ruling because the evidence would have shown Filloon was not a credible witness.

We review the court's evidentiary rulings for an abuse of discretion. *State v. Putman,* 848 N.W.2d 1, 8 (Iowa 2014). A district court abuses its discretion when its decision rests on grounds or reasons clearly untenable or to an extent clearly unreasonable. *Id.* There will be no reversal unless a party has suffered prejudice. *Id.*

Under rule 5.608(b), the cross-examination of a witness may include impeachment by inquiry into specific instances of conduct. *State v. Houston*, 439 N.W.2d 173, 177 (Iowa 1989). Such inquiries are permissible "if probative of the witness's truthfulness or untruthfulness." *Id.* "We disturb a trial court's rulings bearing on these questions only when the broad discretion accorded the court has been obviously abused." *Id.*

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See* Iowa R. Evid. 5.403. We use a two-part test to determine whether evidence should be excluded under rule 5.403. *See State v. Huston,* 825 N.W.2d 531, 537 (Iowa 2013). First, we "consider

the probative value of the evidence." *Id.* Second, we balance the probative value "against the danger of its prejudicial or wrongful effect upon the triers of fact." *Id.*

We conclude the district court did not abuse its discretion in concluding the evidence was not admissible. It was not probative concerning Filloon's truthfulness about the incident in this case. *See State v. Smith*, 522 N.W.2d 591, 593 (Iowa 1994) (finding a witness's lies about a trip were only minimally probative of her truthfulness concerning her allegations of sexual abuse). Where evidence is not probative or only minimally probative, the court does not abuse its discretion by determining the evidence is inadmissible. *See id.*

### IV. Pro Se Issues

**A.** Reeves claims Filloon and Kunde were accomplices and, under Iowa Rule of Criminal Procedure 2.21, their testimony must be corroborated. He states he was denied due process and equal protection, as well as a fair and impartial trial, because their statements were not credible. This issue was not raised before the district court. We do not consider issues raised for the first time on appeal, even constitutional issues. *State v. Derby*, 800 N.W.2d 52, 60 (Iowa 2011). Therefore, we do not consider this issue.

**B.** Reeves also claims there is insufficient evidence in the record to support his convictions beyond a reasonable doubt. He again states he was denied due process and equal protection. Beyond his bare statement of the issue, Reeves does not provide any argument on his claim. We conclude the issue should be considered to be waived under Iowa Rule of Appellate Procedure 6.903(2)(g)(3). *See State v. Richardson*, 890 N.W.2d 609, 632 n.13 (Iowa 2017)

(Appel, J., dissenting) (stating we do not address an issue where there is a heading but no argument presented in a brief).

**C.** Reeves claims the jury was not comprised of a fair cross-section of the community, denying him a fair trial, due process, and equal protection of the law. He states he was tried by "[a] disproportionally white jury." Reeves did not object to the jury pool on the basis it did not represent a fair cross-section of the community. Reeves did not challenge the jury panel prior to the time it was sworn for examination, and thus, failed to preserve error. Iowa R. Crim. P. 2.18(3); *State v. Johnson*, 476 N.W.2d 330, 333 (Iowa 1991). Because error has not been preserved, we do not address this issue. *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) (noting we do not address issues where error has not been preserved).

We affirm Reeves's convictions.

**AFFIRMED.**