# IN THE COURT OF APPEALS OF IOWA

No. 19-1026
Filed March 3, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ASHLEY MARIE REES,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

Ashley Rees appeals her conviction for theft in the second degree as a habitual offender. **AFFIRMED.**

Curtis Dial of Law Office of Curtis Dial, Keokuk, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by May, P.J., Schumacher, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAHAN, Senior Judge.**

Ashley Rees appeals her conviction for theft in the second degree as a habitual offender. Upon our review, we affirm.

## I. Background Facts and Proceedings

Rees worked as a housekeeper for Shirley Katz in early 2018. During that time, Katz realized she was missing several pieces of jewelry, including "a very large" gold ring embedded with "a small diamond." Katz reported the missing jewelry to the police, who were able to recover three pieces—including the ring—from a local pawn shop. Police determined that Rees had sold the jewelry to the pawn shop.

A Black Hawk County jury found Rees guilty of theft in the second degree, and Rees admitted to a habitual offender enhancement. Rees filed motions in arrest of judgment and for new trial, which the district court denied. The court sentenced Rees to a fifteen-year sentence with a three-year mandatory minimum. Rees appeals. Facts specific to her claims on appeal will be set forth below.

## II. Hearsay Objection

At trial, over defense counsel's objection, the district court allowed Katz to testify about the value of her ring, "to the extent that it's her understanding of the value." Katz testified, "[I]t was estimated at over $2000.00, between two to approximately 2500 because of the gold value." Katz further stated she "went to the jewelry store to have it appraised" "at the end of 2017 . . . sometime back." She described the ring as "a dressy, very large woman's ring" that had been designed for her "about 40 years ago, if not more, and it is all pure gold from the front to the back, so it's valuable."

On appeal, Rees contends the court "erred in admitting hearsay testimony regarding the value of the ring" because "Katz testified as to the value of the ring as told to her by a person who appraised the ring." And according to Rees, the court's error was not harmless because the State had to present sufficient evidence to establish the items taken exceeded $1000 in value. *See* Iowa Code § 714.2(2) (2018).

The general rule is that an owner may testify as to actual value without a showing of general knowledge of market value. *State v. Savage*, 288 N.W.2d 502, 505 (Iowa 1980). "[T]estimony as to value is liberally received with its weight to be determined by a jury." *State v. Houston*, 439 N.W.2d 173, 176 (Iowa 1989). Here, Katz knew the value of her ring and could testify to it. *See State v. Mozena*, No. 1999-277, 1999 WL 975870, at *2 (Iowa Ct. App. Oct. 27, 1999) (affirming valuation evidence stemming from an owner of coins based on his testimony "that a 1989 appraisal of the coins valued his collection at $200,000" and his "estimat[ion that] the value of the collection at the time of theft was $300,000 to $350,000"); *see also, e.g.*, *State v. Dixon*, No. 14-1211, 2015 WL 3624383, at *2 (Iowa Ct. App. June 10, 2015) (noting a jewelry owner's testimony "to the value of the recovered jewelry, with one of the rings appraised at approximately $2500"). Moreover, the jury saw pictures of the ring (as well as other pieces of Katz's jewelry pawned by Rees), observed the ring in person, and could easily arrive at a total value of more than $1000 to find the State met its burden of proof of theft in the second degree. *Cf. State v. Theodore*, 150 N.W.2d 612, 616 (Iowa 1972) (holding jury could base its finding on common knowledge and experience in absence of valuation testimony); *accord State v. Hendrickson*, No. 01-0769, 2002 WL 1072072, at *2

(Iowa Ct. App. May 31, 2002). Upon our review, we conclude the court did not error in overruling the hearsay objection. *See State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014) (setting forth standard of review).

### III. *Motion in Arrest of Judgment*

The day before trial was scheduled to begin, the State filed a motion to amend the trial information to add a habitual offender enhancement alleging Rees had two prior felonies, in 2009 and 2013. The district court approved the amendment that same day. Specifically, the amended trial information included the following additional language:

> Said Defendant was previously convicted of the following felonies:
> 1. Said Defendant, on or about November 2, 2009, in the District Court of Black Hawk County, Iowa, in Black Hawk County Criminal Case number FECR160651, was convicted of the crime of Theft in the Second Degree, in violation of Iowa Code § 714.2(2).
> 2. Said Defendant, on or about January 3, 2013, in the District Court of Black Hawk County, Iowa, in Black Hawk County Criminal Case number FECR183741, was convicted of the crime of Theft in the Second Degree, in violation of Iowa Code § 714.2(2).

The next day, prior to trial, the district court asked if there was "[a]ny further record from the defense before we go pick our [jury]?" The following colloquy then took place:

> DEFENSE COUNSEL: I'd like to make a record of what my plea offer was.
> COURT: Sure.
> DEFENSE COUNSEL: My recollection was that originally the State was only recommending a five-year prison sentence and nothing else. Their most recent offer was that they would recommend five years prison on this and two years prison on a misdemeanor charge that she has and that Ms. Rees would be free to argue and that they would not file the habitual. We counter offered probation, suspended sentence, and the State rejected that, and we rejected the State's offer.
> COURT: State, is that your understanding of the plea agreement—or, the plea offers between the two?

STATE: Correct.

COURT: And, Ms. Rees, again, I'm not trying to convince you to do one thing or another, but are you fully aware of the State's offer and had sufficient time to discuss that with your attorney?

DEFENDANT: Yes.

COURT: And is it, in fact, your desire—or, was your desire to reject that offer at the time?

DEFENDANT: Yes.

STATE: I guess just to clarify, the defendant did accept the offer at one time. We had it set for further proceedings, and then when it came time to actually enter a plea, she backed out of the plea.

COURT: As we sit here today, the amended trial information on file and—so has that offer been revoked?

STATE: Correct.

COURT: All right. Fair enough. On that note, I did come across the motion to amend and the case law that talks about amending it, particularly at what used to be consistent with the Rule of Criminal Procedure to do it even in the middle of trial, now frowned upon, and so I understand the State's motion to amend, and it's been approved, and so that its supplemental and the amended [trial information] are on file. As an habitual felon, the Rules of Procedure do discuss a separate trial on that issue.

Ms. Rees, sometime between now and the conclusion of this case, you and your attorney are going to need to have a conversation regarding that issue. I want both counsel to be aware that, the State and defense counsel, to be aware that in the event, and I'm not assuming anything, but in the event that the jury would return a verdict of guilty to a felony charge, that we would reconvene, depending on when that occurred, but generally speaking within about a half a day with the same jury of 12 to proceed with that enhancement phase in the event Ms. Rees requests a jury trial on that issue as she's entitled to. But, again, consistent with the rules, it does contemplate it is permissible to use the same jury, and I don't intend to reconvene another 60 some odd people and another half a day or more of jury voir dire for that limited purpose. So it will be my intent to use the same, if that issue arises, so I need the State to be fully aware that they'll need to at least plan on that contingency and the defense as well.

. . . Anything else?

STATE: No, Your Honor.

DEFENSE COUNSEL: No, Your Honor.

The jury returned a verdict finding Rees guilty of theft in the second degree,

and defense counsel then informed the court that Rees "plan[ned] to admit prior

convictions" for purposes of the habitual offender enhancement. The court began the habitual offender colloquy with Rees, but it was interrupted when Rees decided she was "not going to admit the prior convictions any longer." The court stated it would reconvene the jury for a trial on the enhancement. Defense counsel stated, "[A]ll they need to prove for the jury is that it was her, that the person involved was her. Our issue is not necessarily that it was her, our issue is with the prior—the prior convictions themselves."[1] Defense counsel explained that Rees was "convicted of a class D felony" in FECR160651 "in 2009," but stated that in 2011, the district court entered an order stating that Rees "had been granted a deferred judgment and ordering that that record be expunged." Defense counsel acknowledged that the same court subsequently entered a nunc pro tunc order in August 2018,[2] correcting the illegal expungement order and confirming Rees's

---

[1] Although defense counsel referenced "convictions," it appears Rees only specifically challenged her 2009 conviction in FECR160651.

[2] Defense counsel also took issue with how the court realized the error—upon the State's motion to correct. The State explained:

> Your Honor, [defense counsel] is incorrect. The court, district court, had no authority to expunge a criminal conviction that was properly entered on November 2nd, 2009. Judge Harris' erroneous order was an illegal order. There is—he had no authority to discharge or expunge the conviction that was in place since 2009. The defendant knew since 2009 that she had a criminal conviction for a felony. She thereafter had a second criminal conviction for a felony in 2013. She went to prison for the offense in 2015. The defendant has no—no standing to challenge an order that was already completed back in 2009. If she wanted to challenge the conviction, she needed to file an appeal timely or file some sort of post-conviction relief action. She did neither. The court had no authority, as I said, to expunge it. That was a—an error. Courts make errors, and they correct them with an order nunc pro tunc, which was done when the error was discovered. It was discovered when I learned that I couldn't find this conviction. It wasn't in the proper location in the computer files because it had been erroneously expunged, and we corrected that by having Judge Harris enter an order nunc pro tunc.

conviction, but maintained that because "the file itself was still expunged" at the time Rees was arrested on the current charge on April 4, 2018, it could not considered a "prior conviction" for purposes of a habitual offender enhancement on the current charge.

The court took judicial notice of FECR160651 and denied Rees's challenge to the validity of her 2009 conviction, ruling as follows:

> I've had a chance to look through the file, the arguments, my notes on the argument. While this is a unique issue, ultimately, it's the court's opinion that the order of September 9, 2011, was an illegal order. It did vacate or expunge a case that the district court has no ability to expunge. And so, consequently, the court, whether they filed a motion or not, the court on its own accord can fix an illegal sentence at any time, and, ultimately, that's what I believe that Judge Harris did. And so as we sit here today, the December—excuse me, the January—the 2009 conviction stands. The 2013 conviction stands. And so to the extent that there is a legal argument challenging that based on the expungement, I understand the argument, the record's made for any appellate issue, but I don't know how to couch it, whether it's a motion or whatnot, but, ultimately, that motion is denied in that regard.

Rees then admitted to the prior convictions, and the court completed the habitual offender colloquy and accepted Rees's admission.

On appeal, Rees contends the court erred in denying her motion in arrest of judgment with regard to the habitual offender enhancement because she "believed her prior offense had been expunged in 2011 and she did not have a felony conviction in . . . FECR160561." Upon our review of the facts and circumstances surrounding this issue, set forth in detail above, we find no abuse of the district court's discretion in denying Rees's motion in arrest of judgment on that basis. *See State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008) (setting forth standard of review). We affirm on that issue.

Rees also challenges the court's denial of her motion in arrest of judgment with regard to the habitual offender enhancement by claiming that "[g]iven that the amended trial information was not filed or approved until one day prior to trial, there was no way for Rees to prepare for this or be ready for these allegations at trial."[3] *Cf.* Iowa R. Crim. P. 2.4(8)(a) ("The court may, on motion of the state, either before or during the trial, order the indictment amended so as to correct errors or omissions in matters of form or substance. Amendment is not allowed if substantial rights of the defendant are prejudiced by the amendment, or if a wholly new and different offense is charged.").

"[A]mending the information during trial to add an enhancement can prejudice 'substantial rights of the defendant'—if the defendant had no prior notice of the State's plan to amend and would have pled guilty had he or she known of that plan before trial." *State v. Brothern*, 832 N.W.2d 187, 196 (Iowa 2013). But here, "[s]ignificantly and unlike the facts in *Brothern*, the State's amendment adding the habitual offender enhancement to [Rees]'s trial information was not during the trial. There is also no record that [Rees] sought a continuance for additional time to prepare or that any continuance sought was denied." *See State v. Conard*, No. 12-0959, 2013 WL 2638094, at *3 (Iowa Ct. App. June 12, 2013). Contrary to her claim on appeal, it is clear Rees was aware of the enhancement

---

[3] We question whether this claim was raised before the district court. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (observing that error preservation generally requires an issue "to be both raised and decided by the district court before we will decide them on appeal"). However, we elect to bypass the error preservation concern and proceed to the merits of this claim. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing an error-preservation problem and proceeding to the merits of the appeal).

amendment prior to trial, as enunciated in discussions between the parties regarding various plea offers and rejections thereof, as detailed above. Because Rees had notice prior to trial and had sufficient time to determine her plea strategy and make an informed plea, seek a continuance of the trial, or proceed to trial, we decline to conclude Rees's constitutional rights were offended and we affirm on this issue. *See id.*; *State v. Vandermark*, No. 19-2112, 2021 WL 210972, at *3 (Iowa Ct. App. Jan. 21, 2021) ("The amendment here occurred a week before trial, and Vandermark was offered an opportunity to plead guilty without the enhancement before trial started. Vandermark was offered and also waived the opportunity to have a separate trial on the habitual-offender enhancement. On appeal, Vandermark does not assert any change in his trial strategy caused by the amendment. We discern no prejudice. The district court did not err in allowing the amendment.").

## IV.    *Ineffective Assistance of Counsel*

Rees states, "The Appellant believes that there may be issues regarding ineffective assistance of counsel. However, these should be reserved for the filing an application for postconviction relief." We decline to consider these undeveloped claims, *see* Iowa R. App. P. 6.903(2)(g), but Rees is free to raise a claim of ineffective assistance of counsel in a postconviction-relief action.

Having addressed the issues before us on appeal, we affirm.

**AFFIRMED.**